NOT DESIGNATED FOR PUBLICATION

No. 115,274

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

THOMAS J. JILKA,
*Appellant*.

MEMORANDUM OPINION

Appeal from Miami District Court; AMY L. HARTH, judge. Opinion filed April 14, 2017.
Affirmed.

*Kai Tate Mann*, of Kansas Appellate Defender Office, for appellant.

*Amanda G. Voth*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., ATCHESON and BRUNS, JJ.

*Per Curiam*: Thomas J. Jilka was charged with two counts of felony animal cruelty after he admitted to abusing a dog. At trial, Jilka argued that he could only be convicted of the lesser included offense, misdemeanor animal cruelty, because he did not act maliciously; rather, he argued the effects of methamphetamine withdrawal caused him to act out. The jury found Jilka guilty of both felony counts. He now appeals. Finding no reversible error, we affirm Jilka's convictions.

FACTUAL AND PROCEDURAL HISTORY

Shortly after moving in with his sister and her boyfriend, Jilka, Timothy McCarley came home from work and noticed that his dog, Baxter, had a number of injuries on his head that looked like they had been made with a Phillips head screwdriver. Because McCarley suspected that someone was hurting his dog, he purchased a camera to record what happened in his room, where the dog was kept, while he was gone. Approximately 2 weeks after McCarley noticed the first injuries, he came home and noticed 30 to 40 new injuries on Baxter's head.

When McCarley reviewed his camera feed, he discovered that Jilka spent time in his room that day. On the video, which was played for the jury during Jilka's trial, Jilka can be seen entering and exiting the room several times over a 41-minute period. The first time Jilka entered the room, he had with him a large beer bottle and a cigarette. He left almost immediately and returned with a screwdriver. Shortly after his return to the room, off screen sounds of banging and yelping began. Banging, thudding, and slamming noises mixed with sounds of a dog barking, whimpering, yelping, and panting continue off and on for about 15 minutes. Jilka's voice can then be heard taunting Baxter—asking the dog if he's "scared," telling him "that's what you get," and threatening to "hit you in your fucking face." A while later, Jilka can again be heard telling the dog "that's what you get."

Approximately 30 minutes after he began, Jilka left the room and turned off the light. The room was quiet for several minutes, the only sound being the panting of a dog. Jilka, however, returned to the room and again taunted the dog, calling him a "defenseless little bitch." At that time, more banging and slamming noises can be heard. Shortly thereafter, Jilka left the room for the last time.

After watching the video, McCarley went to his mother, Wendy McCarley, told her what Jilka had done, and asked her to call the police. Police came and McCarley turned over a copy of the video footage to them.

The next day, Detective David Stuteville located Jilka at his parents' house and conducted an interview about the incident. When Stuteville made contact with Jilka, he asked if Jilka knew why he was there to see him. Jilka replied that he believed the detective was there to talk to him about the "abuse of the dog." During the course of the interview, Stuteville asked Jilka why he had abused the dog. Jilka replied that "the dog was obnoxious and he didn't like the dog." Jilka admitted that he had abused the dog on two separate occasions a couple weeks apart. Jilka said that during the first incident, he punched the dog and stuck him with a screwdriver several times. During the second incident, he again struck the dog with a screwdriver, hit him, jabbed him with a broom handle, punched him, and choked him. When asked if he had intended to kill Baxter, Jilka replied that he had not, he "'just [wanted] to inflict pain.'"

At the time of the interview, Jilka appeared calm and did not seem to be under the influence of drugs or alcohol. Stuteville asked Jilka if he had been under the influence when he abused Baxter. Jilka contended that he had not been intoxicated at all.

Jilka was charged with two counts of felony animal cruelty. At trial, Jilka's theory of defense was not that he was entirely innocent, but rather that he was guilty only of the lesser included charge. Jilka argued that the effects of methamphetamine withdrawal caused him to act out against Baxter so that his actions were not done maliciously.

The jury found Jilka guilty on both counts of felony animal cruelty. Jilka now appeals.

ANALYSIS

*The district court did not err when it denied Jilka's motion for a mistrial.*

Jilka first argues that the district court erred when it denied his motion for mistrial after the State, during voir dire, referenced the fact that Jilka was charged with a felony crime. Jilka argues that this violated the State's own motion in limine which was granted and prohibited the parties from "refer[ring] to, or mak[ing] mention of, the possible sentence the defendant will face should he be found guilty of the crimes[s] charged."

When a motion for mistrial is made, the district court conducts a two-step analysis. First, it determines if, as a result of the alleged error, the "proceeding suffered some fundamental failure." *State v. Corey*, 304 Kan. 721, 730, 374 P.3d 654 (2016). If it answers that question in the affirmative, the district court goes on to consider "whether the trial can continue without an injustice, *i.e.*, whether the prejudicial conduct's damaging effect can be removed or mitigated by an admonition, jury instruction, or other action. If not, the trial court must determine whether the degree of prejudice results in an injustice." 304 Kan. at 730. If the district court finds injustice, it declares a mistrial. 304 Kan. at 730.

On appeal, this court reviews each of the district court's determinations separately. First, this court examines the district court's conclusion regarding whether there was a fundamental failure and asks whether the conclusion was arbitrary, fanciful, or unreasonable; based on an error of law; or based on an error of fact. 304 Kan. at 730. If this court determines that the district court correctly found that there was a fundamental failure, it then reviews the entire record to determine whether the fundamental failure affected the trial's outcome, *i.e.*, resulted in injustice. 304 Kan. at 731 (recognizing that in the past review of both parts has been described as abuse of discretion, but the second step is actually reviewed for harmlessness). If the error was not a constitutional error, this

4

court should only reverse the district court if there is a reasonable probability that the error affected the outcome of the trial. But a constitutional error may be declared harmless only when it is demonstrated beyond a reasonable doubt the error will not or did not affect the trial's outcome in light of the entire record, *i.e.*, when there is no reasonable possibility the error contributed to the verdict. 304 Kan. at 731-32.

After the prosecutor mentioned to the potential jurors that Jilka had been charged with felony animal cruelty, a sidebar was held during which Jilka argued that mention of the severity of the charge violated the State's motion in limine. The district court denied Jilka's motion for mistrial but admonished the State not to mention the severity of the crime again. Although the district court did not explicitly go through the two-step analysis discussed in *Corey*, based on the district court's denial of the motion and subsequent admonition of the State, this court can presume that the district court either found that there was a violation of the order in limine but that the error was harmless or found that there was no violation of the order in limine but decided to admonish the State out of an abundance of caution. See *State v. Neighbors*, 299 Kan. 234, 240, 328 P.3d 1081 (2014) (where findings of fact are inadequate [absent an objection thereto], an appellate court can presume that the district court found all facts necessary to support its judgment). So, assuming first that the district court determined that there was no violation of the order in limine, we determine whether it was an abuse of discretion to so find.

The primary purpose of an order in limine is to prevent prejudice during trial. See *State v. Santos-Vega*, 299 Kan. 11, 25-26, 321 P.3d 1 (2014) (discussing the importance of parties abiding by such orders). In this case, the State filed a motion in limine and obtained an order in limine to prevent either party from discussing the possible penalty Jilka might face. The State's reason for making this request is clear. It was not fearful that the jury would use this information to treat Jilka more harshly, quite the contrary. The State wanted to insure that the jury did not compromise to the defendant's benefit when jurors became aware of the harsh penalties he could face for abusing an animal. See

5

*Debose v. State*, 270 Ind. 675, 676, 389 N.E.2d 272 (1979) (When deciding guilt, a jury must be oblivious to potential penalties, "otherwise, we would be condoning verdicts in which the jury might compromise, to the defendant's benefit or detriment in order to reach a certain number of years of imprisonment."). Jilka argues that the mere mention of the word felony was a violation of the order and prejudiced his defense. He points out that his sole defense was that he did not act maliciously. By informing the jury that Jilka was charged with a felony, Jilka argues that the jury was more likely to find that he had an evil or malicious intent. He cites no cases to support his position.

Stating that the offense for which Jilka was charged was a felony in no way indicated the penalties that he could face. In fact, the maximum penalty is 1 year, whether it is a felony or a misdemeanor under Kansas law. See K.S.A. 2016 Supp. 21-6412(b). So, if we assume that the district court denied Jilka's motion for a mistrial because it believed there was no violation of the order in limine, it did not abuse its discretion.

But even if the district court believed that there was a violation of the order in limine and the violation constituted a fundamental failure in the proceedings, the violation was clearly harmless. To support our conclusion, we next review the record to determine whether mentioning in voir dire that Jilka was charged with a felony affected the trial's outcome. See *Corey*, 304 Kan. at 731. The party benefiting from the error bears the burden of proving that it was harmless. *State v. McCullough*, 293 Kan. 970, 983, 270 P.3d 1142 (2012).

Citing evidence presented at trial, the State argues that "[a]ny mention of the word 'felony' in voir dire is far outweighed by the substantial, overwhelming, and deeply troubling evidence presented against Jilka by the State." The State's argument is persuasive. There was substantial evidence that Jilka acted maliciously in his abuse of Baxter. In addition to hearing testimony from witnesses that Jilka confessed to abusing the dog because he did not like it and wanted to hurt it, the jury was able to watch and

6

listen to the 45-minute webcam footage of Jilka alternatively abusing and taunting the dog. In light of that overwhelming evidence of Jilka's malicious intent, there is no chance that the jury would have reached a different result had the prosecutor not mentioned, during voir dire, that the charge against Jilka was a felony charge.

Moreover, jurors were instructed about the differences in the intent element between the charges and the lesser included offenses. In addition, curative instructions were given at the close of evidence. The district court instructed the jury that it was to consider all admitted evidence and to disregard any testimony that was not admitted into evidence. The district court further instructed that statements of counsel are not evidence. In *State v. Brown*, No. 99,047, 2009 WL 1530785, at *3 (Kan. App. 2009) (unpublished opinion), this court concluded that such instructions cured a similar evidentiary error by the State that was made during voir dire. And finally, the jury was instructed that its only job was to determine if Jilka was guilty or not guilty. "The disposition of the case is a matter for determination by the court."

Accordingly, even if we assume that the State violated the order in limine and further assuming for purposes of this discussion that it was an error of constitutional magnitude with its accompanying high standard of review for harmlessness, it was harmless. We find that the district court did not err when it determined that Jilka's right to a fair trial was not prejudiced by the State's mention during voir dire that the charge Jilka faced was a felony.

*The district court did not err when it allowed Officer Basore to testify.*

Jilka next argues that the district court erred when it allowed both Detective Stuteville and Officer Donnie Basore to testify regarding their initial interview with Jilka. Jilka contends, and the State concedes, that Basore testified to "nearly the same items as

7

Stuteville." On appeal of an evidentiary issue such as this, this court conducts a two-step review.

First, this court must determine whether the evidence provided by the challenged testimony was relevant. *State v. Bowen*, 299 Kan. 339, 348, 323 P.3d 853 (2014). Evidence is relevant if it has any tendency to prove a material fact. K.S.A. 60-401(b). "Relevant evidence is both: (1) material, *i.e.*, the fact has a legitimate and effective bearing on the decision of the case and is in dispute; and (2) probative, *i.e.*, it has any tendency in reason to prove the fact." 299 Kan. at 348. If it determines the evidence was relevant, this court then reviews the district court's decision to admit the testimony for an abuse of discretion. *State v. Torres*, 280 Kan. 309, 333, 121 P.3d 429 (2005). A district court abuses its discretion when it acts (1) arbitrarily, fancifully, or unreasonably so that no person would have taken the view of the district court; (2) based on an error of law; or (3) based on an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015).

The evidence at issue here was clearly relevant. Basore accompanied Stuteville to interview Jilka after McCarley reported that Baxter had been abused by Jilka. During the interview, Jilka admitted that he had abused the dog because the dog annoyed him. At trial, Basore was asked to recall details of the interview, including Jilka's responses to questions such as whether he was intoxicated at the time he abused Baxter and his motivation for hurting the dog. That testimony was relevant to whether Jilka had the requisite state of mind to be convicted of felony animal abuse and to Jilka's voluntary intoxication affirmative defense. Contrary to Jilka's contention that Basore's testimony was used to bolster the credibility of Stuteville, it was offered to corroborate Stuteville testimony that Jilka did not appear to be under the influence at that time he was questioned and that Jilka stated he was not drunk when the incident happened.

Jilka cites no cases in which an appellate court has found that a district court abused its discretion when it allowed two witnesses to testify to the same subject matter.

The State, on the other hand, points to a number of cases in which this court and our Supreme Court have upheld district court decisions permitting cumulative testimony, particularly when it serves to corroborate a material fact in the case. See *Torres*, 280 Kan. at 333 (expert witness corroborated other medical testimony); *State v. Rice*, 261 Kan. 567, 585, 932 P.2d 981 (1997) (no abuse of discretion when multiple witnesses corroborate each other); *State v. Johnson*, 231 Kan. 151, 156-57, 643 P.2d 146 (1982) (both witnesses testified to relevant evidence even though cumulative); *State v. Kackley*, 32 Kan. App. 2d 927, 934-35, 92 P.3d 1128 (2004) (no error to allow two witnesses to give cumulative testimony on same subject).

There is nothing unique about this case that causes this court to depart from these prior decisions finding that it was within the district courts' discretion to permit more than one witness to testify about an issue relevant to a case. Accordingly, we find no abuse of discretion here when the district court allowed a witness to corroborate the testimony of another witness on the issue of Jilka's intoxication at the time of the offense and the time of the interview.

*The district court did not err when it failed to give a limiting instruction.*

Jilka next claims that the district court erred when it failed to give a limiting instruction that would have cautioned the jury not to consider testimony relating to Jilka's drug use or a restraining order issued against him when considering his guilt in the case. Jilka recognizes that he did not ask the district court to give a limiting instruction. When a defendant, on appeal, argues that the district court erred when it failed to give an instruction that he or she did not request, this court reviews the failure for clear error. *State v. Molina*, 299 Kan. 651, 655, 325 P.3d 1142 (2014).

A clear error analysis consists of this court first considering whether the district court legally should have given the omitted instruction. If this court finds that the

9

instruction should have been given, it then reviews the entire record to determine whether it is firmly convinced that the jury would have reached a different verdict if the instruction had been given. Both parts of the analysis are subject to de novo review. The defendant bears the burden of persuading this court that there was clear error. 299 Kan. at 655.

The State concedes in its brief that a limiting instruction regarding Jilka's drug use should have been given but contends that failure to do so was not clear error. It maintains, however, that there was no legal basis for giving a limiting instruction regarding a spontaneous comment by a witness that she was not around Jilka much since the incident "because of the restraining order."

Although we are not at all convinced that a limiting instruction was necessary regarding either issue, we will assume for purposes of this discussion that a limiting instruction should have been given. But even making such an assumption, it is clear to us that the district court's failure to give a limiting instruction was not clear error.

As to the drug use, Jilka argues that "[a] limiting instruction would have properly focused the jury's attention to Mr. Jilka's mental state, allowing [it] to truly evaluate whether Mr. Jilka' methamphetamine withdrawals . . . would negate 'actual evil mindedness as required by the jury instructions." But the evidence that Jilka acted with malice was overwhelming. Jilka admitted to officers that he intended to hurt Baxter and that his motivation for doing so was that he thought the dog was obnoxious. The jury was able to hear Jilka, in his own words and voice, taunting and threatening the dog. Moreover, Jilka's attorney proposed in opening statements that withdrawal from methamphetamine use was the reason he abused Baxter and that he would drink alcohol to combat the symptoms. Jilka discussed it during his own testimony. And his attorney again discussed it during closing argument. We have no hesitation in concluding that the

jury would not have returned a different verdict had a limiting instruction been given regarding Jilka's drug use.

As to the reference to a restraining order, Jilka admits that the witness "may have been referring to the protective order entered into this case." The comment was isolated and fleeting. It was clearly not solicited and there is no allegation that it was. There was no discussion regarding the details of the restraining order and against whom it was issued. No other mention was made of it. Given the overwhelming evidence of Jilka's actions in this case, we also have no hesitation finding that the jury would not have returned a different verdict had a limiting instruction been given regarding the reference to a restraining order.

*Cumulative error did not deprive Jilka of his right to a fair trial.*

Finally, Jilka argues that cumulative error deprived him of his right to a fair trial. When an appellant makes such an argument, this court looks at the totality of the circumstances to determine whether the appellant was substantially prejudiced by cumulative errors so that he or she was denied a fair trial. This court examines the errors in light of the entire record, considers how the district court dealt with the errors, weighs the nature and number of errors, examines whether the errors were interrelated, and balances those things against the overall strength of the evidence to determine whether the errors were harmless. *State v Holt*, 300 Kan. 985, 1007, 336 P.3d 312 (2014).

There were potentially two errors during Jilka's trial. We will assume that the first came when the prosecutor, during voir dire, mentioned that the offense Jilka was on trial for was a felony. The second error came at the end of the trial when the district court failed to give limiting instructions. The first error was relatively minor and took place before the presentation of evidence began. While the district court did not admonish the jury at the time that it should disregard the statement, it did issue jury instructions

11

warning the panel to only consider testimony and exhibits that had been admitted into evidence when reaching its decision. The district court further counseled that statements made by the parties' attorneys were not evidence and that it was up to the court to determine the disposition of the case, not the jury.

The second error was unrelated to the first and involved the failure of the court to give limiting instructions. Although we did not find that the failure to give these instructions was error, we had no hesitation finding that the failure was harmless. Jilka attempted to use the effects of methamphetamine withdrawal as part of his defense—Jilka wanted the jury to know that he was a drug user and ultimately hoped that that fact would cause the jury to find him guilty of only the lesser included offense. In addition, the fleeting and unintended reference to a restraining order was sufficiently vague to have no impact on the ultimate verdict in the case.

Once again, we are convinced that these relatively minor errors, even when considered together, did not affect the outcome of the trial in light of the overwhelming evidence of Jilka's guilt. These errors did not prevent Jilka from receiving a fair trial.

Affirmed.

\* \* \*

ATCHESON, J., concurring: Without hesitation, I join my colleagues in affirming the convictions of Defendant Thomas J. Jilka for felony cruelty to animals—in this case, a dog that belonged to his sister's boyfriend. The overwhelming evidence showed that Jilka deliberately tortured the dog on two separate occasions. As I observed early in my judicial career: "There is something about the mistreatment of domesticated animals that often stirs up revulsion, anger, and other particularly negative responses." *State v. Freund*, No. 102,481, 2011 WL 135020, at \*1 (Kan. App.) (unpublished opinion), *rev.*

12

*denied* 291 Kan. 915 (2011). This is just such a case. Despite the clarity of the evidence and the malevolence of the conduct, we should remain cautious in how we detail the issues, for that discussion even in this unpublished decision may serve to guide future discussions. With that in mind, I am prompted to offer two qualifications to the majority's approach.

First, in this case, the State properly called Officer Donnie Basore to corroborate the testimony of Detective David Stuteville about the questioning of Jilka at his parents' home. But that conclusion should not be extrapolated beyond the facts of this case. See *Brown v. Ryan*, No. 104,088, 2011 WL 6309451, at *7 (Kan. App. 2011) (unpublished opinion) (Atcheson, J., concurring) ("[A] court should ask whether the significant facts of the case at hand are sufficiently similar to the case or cases in which the rule has been developed and applied to warrant the same treatment."). In his brief on appeal, Jilka says: "Officer Basore's testimony was a naked attempt at bolstering the credibility and testimony of Detective Stuteville after the defense's cross[-]examination effectively showed that Detective Stuteville took almost no steps to affirm the accuracy of his report[] and did not take a recording of the interview." Basically, Jilka submits that his trial lawyer ably challenged Det. Stuteville as an accurate historian about what happened when he questioned Jilka. But that is precisely the reason corroborating evidence—here in the form of Officer Basore's testimony—would be relevant and admissible.

The operative historical fact to be proved was what Jilka said in the interview about what he did to the dog. (Jilka's account, of course, was then highly probative of what he actually did to the dog and why—the ultimate issues in the case.) Especially when Jilka challenged the reliability of the historical fact through cross-examination of a witness to that fact, the State could offer additional witnesses to the fact to prove it. Take, as another example, a tort case turning on which driver had the green light at a controlled intersection at the time of their collision. A witness testifies that he was present at a bar a week after the collision when the defendant admitted the plaintiff, indeed, had the green

13

light. At trial, the defendant's lawyer shows the witness to have been intoxicated at the time and, thus, possibly mistaken. The plaintiff could call other witnesses to testify about the defendant's barroom admission, effectively corroborating the drunk witness' account. And most district courts would allow more than one witness to testify to the defendant's admission in any event. At some point, the number of additional witnesses would become so repetitive that a district court could preclude more of the same testimony as unnecessarily cumulative.

What's less clear, however, is whether the State could have bolstered Det. Stuteville by calling witnesses to testify to accounts he gave between the time of the interview and the trial as to what Jilka had said. That is, could the State have corroborated Det. Stuteville's trial testimony with his own consistent out-of-court accounts of the disputed historical fact? This case doesn't present that question. But the majority's broad discussion could be construed as suggesting a categorically affirmative answer to that evidentiary question. To the extent it might, I reserve any opinion on that point.

The answer is fairly debatable, especially if the witness were attacked as mistaken in or lying about his or her original version of the historical fact. Any later accounts presumably would similarly incorporate those mistakes or lies—so the consistency wouldn't be particularly probative of accuracy or veracity. If, however, the witness were attacked as forgetful of what happened or as engaging in a recent fabrication, an earlier and consistent account of the historical fact would tend to dispel the impeachment.

As to my second qualification, the majority assumes the district court should have given limiting instructions about Jilka's use of methamphetamine and a witness' reference to a restraining order. The majority finds no reversible error. I, too, see no basis for upsetting the convictions and doubt the issues present reviewable error at all.

Jilka, of course, offered his use of methamphetamine as excusing or at least mitigating his horrific treatment of the dog. Given the way the evidence came up, I presume Jilka's trial lawyer would have asked for a limiting instruction if he had wanted one. A district court typically should not give a limiting instruction in the absence of a request from the party adversely affected by the evidence. And it certainly should not do so over that party's objection.

A limiting instruction necessarily calls attention to specific evidence and treats it differently from other evidence. Oftentimes, the adversely affected party might—as a matter of trial strategy—prefer no judicial spotlight be focused on the evidence. Likewise, jurors, on the whole, scrupulously try to do what district courts tell them. So if a district court says to consider evidence for a particular purpose, they will endeavor to comply. But that sort of instruction necessarily implies the evidence could have some other implications or relevance. And human nature being what it is, the instruction may unavoidably prompt some jurors to ponder those implications at least briefly. Depending on the circumstances, a trial lawyer, therefore, could prefer no judicial intervention, and that's a preference a district court should honor.

A district court concerned about the record certainly could inquire outside the presence of the jury whether a party wishes a limiting instruction on certain evidence and, if so, the form the directive might take. Declination on the record in the district court would derail any complaint on appeal as invited error.

Consistent with comments I have made before, I do not endorse the notion that a district court should automatically or unilaterally give a limiting instruction even though there may be legally sufficient grounds to do so. See *State v. Massengale*, No. 109,351, 2014 WL 349612, at *10-12 (Kan. App. 2014) (unpublished opinion) (Atcheson, J., concurring), *rev. denied* 301 Kan. 1050 (2015). Here, the record suggests a tactical

15

decision against any limiting instruction on Jilka's drug use. Without some indication otherwise, I would not take up the issue for the first time on appeal.

As to the witness' passing reference in her testimony to a "restraining" order, I agree Jilka can show no reversible error. The referenced order was not relevant to any issue in the case, and Jilka promptly objected. The district court responded simply that the question had been asked and answered, a ruling that misses the point of the objection. The district court should have sustained the objection and told the jurors to disregard the testimony about a restraining order. Jilka later requested a mistrial based on the witness' comment. The district court quite properly denied the request, since the fleeting mention of the order could not have rendered the trial materially unfair to Jilka. See K.S.A. 22-3423(1)(c) (district court may declare mistrial when "prejudicial conduct" creates irremediable "injustice to either the defendant or the prosecution"); *State v. Angelo*, 287 Kan. 262, 285, 197 P.3d 337 (2008) (mistrial warranted if circumstances deprive defendant of fair trial). Jilka's argument on appeal for a limiting instruction also misses the point. The restraining order wasn't admissible for any purpose, so no instruction to the jurors limiting their consideration of it to a specific (and proper) purpose should have or could have been given.