(92 P.3d 1128)
No. 90,303

STATE OF KANSAS, *Appellee*, v. LESLIE E. KACKLEY, *Appellant*.

Opinion filed July 9, 2004.

*Cory D. Riddle*, assistant appellate defender, for appellant.

*Boyd K. Isherwood*, assistant district attorney, *Nola Foulston*, district attorney, and *Phill Kline*, attorney general, for appellees.

Before MALONE, P.J., GREENE and MCANANY, JJ.

GREENE, J.: Leslie E. Kackley appeals his conviction of aggravated indecent liberties with a child under 14 years of age, arguing numerous trial and sentencing errors. We affirm.

## Factual and Procedural Overview

Kackley was charged with two counts of aggravated indecent liberties with a child, A.G., the daughter of a friend, after visiting in the friend's home. The incident occurred in the friend's bedroom after Kackley left the adults to go to the bathroom, and the encounters consisted of Kackley twice placing A.G.'s hand on his exposed penis. Further details of the incident will be discussed and analyzed as appropriate to the issues raised. Kackley denied enter-

ing the bedroom with the child and committing the aggravated indecent liberties.

Prior to trial, the district court denied Kackley's motion to dismiss a juror for cause, and Kackley used a peremptory challenge to remove the juror. Kackley's defense strategy at trial was to claim that he was innocent and that A.G. fabricated the allegations because he had threatened to "whip [her] butt." Prior to A.G.'s testimony, the State called A.G.'s mother and the investigating officer, both of whom related A.G.'s account of the incident. The State also called C.D., a victim of a similar crime committed by Kackley, who was permitted to testify about the prior crimes over the objection of defense counsel. Ultimately, the district court dismissed the second count, holding that the counts were multiplicitous and that there was only one chargeable incident. The jury convicted Kackley of one count of aggravated indecent liberties with a child, and he was sentenced to 214 months' imprisonment. He appeals, claiming error in the court's refusal to strike a juror for cause, in the admission of certain evidence, and in his sentencing.

*Did the District Court Err in Admitting Evidence of Prior Crimes to Show Intent and Plan?*

Kackley had previously pled no contest to aggravated indecent liberties and aggravated criminal sodomy involving C.D. The district court permitted C.D. to testify over Kackley's objection that the testimony was inadmissible under K.S.A. 60-455, holding that the evidence was relevant to show intent and plan, that these facts were disputed, material facts, and that the probative value of C.D.'s testimony outweighed the prejudicial effects. If the requirements for admission of such evidence are met, we review the district court's evidentiary ruling for an abuse of discretion. *State v. Tiffany*, 267 Kan. 495, Syl. ¶ 2, 986 P.2d 1064 (1998).

Under K.S.A. 60-455, evidence of prior crimes on a specified occasion is not admissible to prove the defendant's "disposition to commit crime . . . as the basis for an inference that the [defendant] committed another crime . . . on another specified occasion." K.S.A. 60-455 authorizes the admission of such evidence, however, "when relevant to prove some other material fact includ-

ing motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." Before admitting evidence under K.S.A. 60-455, the trial court must find: "(1) the evidence is relevant to prove one of the facts specified in the statute; (2) the fact is a disputed, material fact; and (3) probative value of the evidence outweighs its potential prejudice. [Citation omitted.]" *State v. Lane*, 262 Kan. 373, 388, 940 P.2d 422 (1997).

As noted by our Supreme Court, the application of K.S.A. 60-455 has been subject to considerable conflicting views and decisions. *State v. Rucker*, 267 Kan. 816, 824, 987 P.2d 1080 (1999). The difficulties in application are most acute in sex crime cases. Compare, *e.g.*, *State v. Damewood*, 245 Kan. 676, 681-82, 783 P.2d 1249 (1989), with *State v. Clements*, 252 Kan. 86, 89-90, 843 P.2d 679 (1992). Proper resolution of issues surrounding the admissibility of evidence of prior sexual misconduct when charged with a sex crime is particularly critical to a fair trial. Such evidence can easily be perceived by a jury as evidence of a propensity to commit the acts charged, which is impermissible under K.S.A. 60-455. See *State v. Jones*, 277 Kan. 413, 424, 85 P.3d 1226 (2004) (citing *United States v. Peden*, 961 F.2d 517, 520 [5th Cir. 1992]).

Initially, we examine whether the evidence of Kackley's prior crimes was admissible to show intent. Generally, evidence of prior crimes is not admissible to show intent where criminal intent is obviously proven by the mere doing of the act itself. *State v. Nunn*, 244 Kan. 207, 212, 768 P.2d 268 (1989). Where the evidence of the circumstances surrounding the allegations of a sex crime and the specified acts themselves leave no room for even an inference that the acts may have been innocent acts lacking the requisite intent, the introduction of prior crimes has no probative value. *State v. Dotson*, 256 Kan. 406, 413, 886 P.2d 356 (1994); see *Rucker*, 267 Kan. at 826. Here, Kackley's placing of A.G.'s hand on his exposed penis leaves no room for an inference of innocence; the evidence of prior crimes was not admissible to show intent, since criminal intent was obvious in the mere doing of this act. The district court erred in finding that the evidence was relevant in part to prove intent.

Even though the evidence was inadmissible to show intent, we must examine the alternative basis for admission of the evidence, since the error would be harmless if there is another reason for admission which fits within the statutory exceptions. See *State v. McBarron*, 224 Kan. 710, 713, 585 P.2d 1041 (1978). The more difficult analysis in this case is whether the evidence of Kackley's prior crimes was admissible to show plan or modus operandi.

"The rationale for admitting evidence of prior unrelated acts to show plan under K.S.A. 60-455 is that the method of committing the prior acts is so similar to that utilized in the case being tried that it is reasonable to conclude the same individual committed both acts. In such cases the evidence is admissible to show the plan or method of operation and conduct utilized by the defendant to accomplish the crimes or acts. [Citation omitted.]" *Damewood*, 245 Kan. at 682.

A number of decisions have upheld the admission of K.S.A. 60-455 evidence in sex crime cases where the details of the plan for the prior crimes and the crime for which the defendant was on trial were "strikingly similar." See, *e.g.*, *Rucker*, 267 Kan. at 825-29; *Tiffany*, 267 Kan. at 497-502; *Damewood*, 245 Kan. at 682; *State v. Aldaba*, 29 Kan. App. 2d 184, 189-92, 25 P.3d 149 (2002). In *State v. Tolson*, 274 Kan. 558, 563-64, 56 P.3d 279 (2002), the court held that *Damewood* contained so distinct a method of operation as to be a "signature." In *Clements*, 252 Kan. at 90, the court held such evidence admissible with no requirement of "striking" similarities but rather because the evidence showed that the general method used was "similar enough to show a common approach that is tantamount to a plan." In *Jones*, 277 Kan. at 419-24, our Supreme Court analyzed admissibility by comparing the similarities to the dissimilarities between the prior crimes and the acts charged, but then discounted similarities that may be present in many child sexual abuse scenarios in holding the evidence inadmissible.

Here, as in *Jones*, there were both similarities and dissimilarities between the prior crimes and the acts charged. The similarities were: (i) A.G. and C.D. were 10-year-old girls; (ii) both victims were known to Kackley; (iii) access to the children was gained through friendship to a parent; (iv) Kackley had the children touch him rather than him touching the children; (v) one or more siblings

were present in the home at the time of incident; and (vi) in both incidents, Kackley began by placing the child's hand on his penis. The dissimilarities were: (i) Although Kackley had no family connection with A.G., he lived with C.D.'s family and portrayed a quasi-parental role; (ii) adults were present in the house at the time of the incident with A.G., whereas no adults were present for the incidents involving C.D.; (iii) following Kackley's placing of A.G.'s hand on his penis, he told her to keep her hand there but she withdrew it, whereas following Kackley's placing of C.D.'s hand on his penis, he forced her to give what she described as "hand jobs." (Although C.D. apparently alleged that Kackley forced her to engage in oral copulation, this evidence was never offered at trial.)

The feature that distinguishes this case from *Jones* is Kackley's "signature" act of first placing the underage girls' hands on his exposed penis; it is a signature act because it is so strikingly similar in pattern or modus operandi as to authenticate the conduct as the defendant's when it is allegedly replicated in a later case. In *Jones*, there was no such signature sexual act; in fact, the court noted that the prior crime involved only fondling in isolation, whereas the acts charged began with intercourse in a group. In contrast, Kackley's signature sexual act aligns this case with *Rucker*, 267 Kan. at 825-29 (where defendant applied lubricant and rubbed the victims' vaginal areas with his penis until ejaculation), and *Aldaba*, 29 Kan. App. 2d at 189-92 (where defendant forced his penis into victims' mouths). Moreover, *Jones* is distinguishable because the dissimilarities here between the prior acts and the acts charged are either relatively minor or reflect only the degree of success obtained; had A.G. not withdrawn her hand, the outcome of her encounter might have been identical to that of C.D. For these reasons, we conclude that the court did not err or abuse its discretion in finding evidence of the prior crimes involving C.D. was relevant to show plan or modus operandi.

Even if we were to conclude that the evidence should not have been admitted, we would conclude that any purported error was harmless, since we believe that any such error would not have changed the outcome of the trial. See *State v. Henry*, 273 Kan. 608, Syl. ¶ 7, 44 P.3d 466 (2002). A key element of A.G.'s allegation

was that Kackley was not wearing underwear at the time of the encounter. Kackley took the stand in his own defense but had to admit upon cross-examination that, on the day of the incident, he indeed had on no underwear. Since there was no possible way for A.G. to have known of this key fact unless her account was true, this fact alone corroborated A.G.'s story and undoubtedly enhanced her credibility with the jury to an extent not likely shaken, even if there had been no evidence of prior crimes. Given both our conclusion as to admissibility of the evidence and our conclusion as to harmless error, we affirm the district court and reject Kackley's first claim of error.

*Did the District Court Err in Denying Kackley's Motion for Mistrial When the Evidence of Prior Crimes Exceeded the Anticipated Boundaries?*

Kackley next argues that the district court erred in denying his motion for a mistrial when C.D.'s testimony exceeded its anticipated limits under K.S.A. 60-455. We review the district court's denial of mistrial for an abuse of discretion. *State v. Manning*, 270 Kan. 674, 696, 19 P.3d 84 (2001).

The problem is that following C.D.'s testimony that Kackley forced her to touch his penis, the prosecution asked whether Kackley ever touched her private parts. When she responded, "He would—he touched my chest," the defense moved for a mistrial. The district court denied the motion, concluding that the State was not expecting that answer, that it came as a surprise to everyone, and that there was no harm "at this point."

The unanticipated response was not only short and lacked detail, it may have been perceived as innocent conduct by Kackley. Given the permissible evidence of prior crimes and the strength of the victim's credibility, we agree with the district court that the apparently unanticipated testimony exceeding the scope of permissible 60-455 testimony did not substantially prejudice Kackley's defense or make it impossible for the trial to proceed without injustice. See K.S.A. 22-3423(1)(c); *State v. Goodwin*, 223 Kan. 257, 259-60, 573 P.2d 999 (1977). We decline to find an abuse of discretion, and we reject Kackley's second claim of error.

*Did the District Court Err in Admitting Prior Consistent Statements of the Victim Prior to the Victim's Own Testimony?*

Kackley next argues that he was denied a fair trial because two other witnesses were permitted to testify about A.G.'s story before A.G. testified, thus "improperly bolstering" A.G.'s testimony. The State first called A.G.'s mother, who related A.G.'s reports of the incident, first to her and then to the investigating officer; no objection was asserted to this testimony. The State then called the investigating officer, who was asked to again relate A.G.'s report of the incident, and the defense objected to this testimony as cumulative. Later, A.G. was called as a witness, and she once again related the incident, together with her report of it to her mother; no objection was asserted to this testimony. We review the district court's admission of the testimony for an abuse of discretion. *State v. Jenkins*, 272 Kan. 1366, 1378, 39 P.3d 47 (2002).

Kackley's claim of error is somewhat confusing in that he relies on some authorities that discuss the inadmissibility of prior consistent statements in the context of the hearsay rule and other authorities that discuss this subject in the context of the cumulative evidence rule. The confusion is compounded by Kackley's citation to federal authorities, despite important distinctions between federal and Kansas exceptions to the hearsay rule. In any event, we conclude that the cumulative nature of the officer's testimony may have been a genuine cause for concern, but we find any error in its admission harmless under the circumstances.

First, we note that evidence of prior consistent statements of a witness who is present in the courtroom does not offend the hearsay rule in Kansas. Since at least 1963, Kansas has recognized an exception to the hearsay rule for statements previously made by a person who is present at the hearing and available for cross-examination, so long as the statement would be admissible if made by the declarant while testifying as a witness. See K.S.A. 2003 Supp. 60-460(a).

The more difficult question is whether admission of repetitious testimony regarding such statements violates the cumulative evidence rule and, if permitted, constitutes an abuse of discretion. We

note at the outset that such repetition is characteristic in the prosecution of child sex crimes and generally draws no objection. See, *e.g., State v. Banks*, 273 Kan. 738, 739-42, 747, 46 P.3d 546 (2002). We concede, however, that Kansas has embraced the general rule that prior statements of a witness, consistent with his or her own testimony at the trial, are not admissible in corroboration of the witness' testimony unless the witness has been impeached and then only for the purpose of rehabilitation. *State v. Whitesell*, 270 Kan. 259, 290, 13 P.3d 887 (2000) (citing *State v. Fouts*, 169 Kan. 686, 696, 221 P.2d 841 [1950]). The rationale for the rule is best stated in 4 Wigmore on Evidence § 1124 (Chadbourn rev. 1972):

"When the witness has merely testified on direct examination, without any impeachment, proof of consistent statements is unnecessary and valueless. The witness is not helped by it; for, even if it is an improbable or untrustworthy story, it is not made more probable or more trustworthy by any number of repetitions of it. Such evidence would ordinarily be both irrelevant and cumbersome to the trial and is ordinarily rejected."

The only recognized exception to this rule is for rape prosecutions, where evidence of the complaint of the prosecutrix is permitted for the express purpose of corroborating her testimony through the testimony of other witnesses. 65 Am. Jur. 2d, Rape § 61, p. 600-01. This exception has also been embraced in Kansas. See *State v. Washington*, 226 Kan. 768, 770, 602 P.2d 1377 (1979). We see no reason that this exception could not be logically extended to prosecutions for sexual abuse of children, including indecent liberties cases. Given this logical extension to a recognized exception to the rule, we are unable to conclude that the district court abused its discretion in permitting the testimony.

Notwithstanding this rule and the exception, we also note that it lies within the authority of a trial court to limit the number of witnesses on a single issue, and our Supreme Court has often found no error in permitting two witnesses for the prosecution to give cumulative testimony on the same subject. See, *e.g., State v. Johnson*, 231 Kan. 151, 156-57, 643 P.2d 146 (1982). Moreover, even if the repetitious testimony of A.G.'s account may have been error, it was certainly harmless where no further challenge to her credibility is apparent in the record.

For all of these reasons, we are convinced that the district court did not abuse its discretion in admitting the cumulative testimony of the investigating officer and, if error, it was harmless under the circumstances. Kackley's third claim of error is rejected.

*Did the Trial Court Abuse its Discretion by Refusing Kackley's Request to Strike a Prospective Juror for Cause?*

Kackley claims he was denied a fair trial because the trial court abused its discretion in denying his challenge for cause of a prospective juror. A prospective juror may be challenged for cause when his or her state of mind with reference to the case or parties prevents the juror from acting impartially and without prejudice to the substantial rights of any party. K.S.A. 22-3410(2)(i). The trial court has discretion in determining challenges for cause as it is in a better position than an appellate court to view the demeanor of prospective jurors during voir dire. Thus, an appellate court will not disturb the trial court's decision regarding a challenge for cause unless its decision is clearly erroneous or an abuse of discretion. *State v. Dixon*, 248 Kan. 776, 788-89, 811 P.2d 1153 (1991).

During voir dire Kackley's attorney explained to the prospective jurors that the State alleged Kackley had inappropriately touched a child in a sexual manner. He asked the jurors about their reactions to such allegations, and one prospective juror, J.M., responded, in part:

"[DEFENSE COUNSEL]: . . . But knowing how you feel, knowing how it makes your skin crawl, you would rather be on any other case, can you put those feelings aside, do you think, listen to the evidence and decide this case based upon the facts that you hear in this trial if you're selected for this jury?

"[J.M.]: I would hope that I could. Can I honestly tell you? I don't know. I would hope that I could.

. . . .

"[DEFENSE COUNSEL]: Okay. So what I hear you saying, I don't want to put words in your mouth, you correct me if I'm mistaken—. . .—is you think you would have a hard time just based upon the nature of the case being fair and impartial and ensuring both sides get a fair trial in this case?

"[J.M.]: Yes, I would agree to that."

In response to Kackley's request to remove this prospective juror from the jury for cause, the State questioned J.M.:

"[PROSECUTOR]: . . . At the end of the case the judge is going to give you the law after you've had an opportunity to listen to all the evidence and ask you to put aside, you know, the ugliness of this and decide legally whether the defendant is guilty or not guilty. Do you think that you can do that?

"[J.M.]: Like I said before, I would hope that I could be able to separate it. Can I guarantee you that? I would hope so.

"[PROSECUTOR]: If the judge tells you that is what you have to do, can you obey the judge and follow the law?

"[J.M.]: Yeah. I'm going to go with yes."

The trial court denied Kackley's request to remove J.M.

Later, Kackley's attorney told the prospective jurors that the State might call C.D., who would testify that Kackley had previously done something similar to C.D., and he questioned J.M. further. Although Kackley argues that these responses further illustrate the claim of error, Kackley did not properly preserve any challenge based upon responses that occurred *after* the trial court's initial ruling because he did not renew his challenge for cause. The general rule is that issues not raised to the trial court will not be considered on appeal absent recognized exceptions. *State v. Williams*, 275 Kan. 284, 288-89, 64 P.3d 353 (2003). Here, we decline to apply any of the exceptions because the essential claim of error is already subject to review, and the supplemental responses are not materially different from those previously elicited.

The trial court did not commit clear error or abuse its discretion by refusing Kackley's challenge for cause to remove J.M. because she ultimately indicated that her decision would be based upon the trial court's instructions to the jury after she had listened to the evidence. Moreover, assuming that J.M. should have been removed, failure to excuse her is no ground for reversal unless Kackley was prejudiced. See *State v. Crawford*, 255 Kan. 47, 50-53, 872 P.2d 293 (1994). Because J.M. was ultimately removed with a peremptory challenge, the question is whether the resulting jury was impartial. See 255 Kan. at 51.

Kackley contends he would have removed another juror, H.S., but he had already exhausted his peremptory challenges on J.M. H.S. stated a member of her family had been a victim of sexual assault in a case that had been prosecuted. The perpetrator of that assault was not a member of her family. H.S. said she had not been

involved in the case in any way and, although she first heard about it 2 years ago, the incident occurred more 10 years earlier. The prosecutor asked H.S. if she could be fair and impartial in this case despite this involvement, and she responded, "Yes."

Although H.S. might have been a candidate for a peremptory challenge as Kackley claims, he has not shown that she was not an impartial juror. Here, the sexual assault case involving her family member was not recent, remained unknown for years, and was expressly and unequivocally rejected by H.S. as affecting her objectivity.

The trial court did not commit clear error or abuse its discretion by refusing Kackley's challenge for cause to remove J.M. from the jury panel and thereby causing him to use a peremptory challenge to do so.

*Did Cumulative Trial Error Deny Kackley a Fair Trial?*

Kackley contends he was denied a fair trial due to cumulative trial errors, relying on the four claims discussed above. Since we have concluded that there was no trial error, the cumulative trial error rule does not apply.

*Did the Trial Court Err in Determining Kackley's Criminal History Score and in Classifying Him as a Persistent Sex Offender Based Upon His Convictions Involving C.D.?*

Kackley contends the trial court erred by including his convictions from the criminal case involving C.D. to calculate his criminal history score and classify him as a persistent sex offender, arguing that these convictions were introduced as "elements" of the current conviction. Interpretation of the Kansas Sentencing Guidelines Act (KSGA), K.S.A. 21-4701 *et seq.*, is a question of law over which an appellate court's scope of review is unlimited. *State v. Perez-Moran*, 276 Kan. 830, 833, 80 P.3d 361 (2003).

Under K.S.A. 21-4710(d)(11), prior convictions of crimes which are used as an element of the present crime shall not be counted in determining the criminal history category; however, all other prior convictions are to be used in determining the criminal history score unless prohibited by statute. See *State v. Taylor*, 262 Kan.

471, 479, 939 P.2d 904 (1997). The determinative issue is whether Kackley's prior convictions involving C.D. were introduced as an "element" of his current conviction such that they cannot be included in his criminal history score.

As discussed above, we have determined that Kackley's prior convictions were not admissible on the issue of intent but were admissible to show plan; thus, the prior convictions did not establish an "element" of the current conviction. Moreover, the fact that Kackley was *convicted* of the prior offenses was not a predicate for admitting the evidence; his prior conduct was relevant absent any evidence of actual conviction. Thus, he could be and was convicted of the current offense absent any requirement of the prior *convictions*, so there is no reason to exclude the prior convictions in calculating his criminal history score. See *Perez-Moran*, 276 Kan. at 833-38.

Kackley also argues that the trial court erred by using Kackley's other prior conviction of aggravated criminal sodomy to classify Kackley as a persistent sex offender. We have previously rejected this argument. See *State v. Armstrong*, 29 Kan. App. 2d 822, 824-25, 33 P.3d 246, *rev. denied* 272 Kan. 1420 (2001) (trial court may classify defendant as persistent sex offender based upon one prior sex offense and include different prior sex offenses from same case in defendant's criminal history score); K.S.A. 2003 Supp. 21-4704(j). The trial court committed no error in calculating Kackley's criminal history score.

*Did the Trial Court Violate Kackley's Sixth Amendment Right by Imposing an Increased Sentence?*

Finally, Kackley argues the trial court violated his right under the Sixth Amendment to the United States Constitution by imposing an increased sentence based upon his prior criminal history. He claims his classification as a persistent sex offender should have been alleged in the complaint and proven to a jury beyond a reasonable doubt. He relies upon *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000).

In *State v. Moore*, 274 Kan. 639, 653-54, 55 P.3d 903 (2002), our Supreme Court noted the defendant's prior and current con-

victions were defined by statute as sexually violent crimes and held the trial court's decision to double the defendant's sentence under K.S.A. 2003 Supp. 21-4704(j) did not violate *Apprendi*.

We are duty bound to follow Kansas Supreme Court precedent, unless there is some indication that the court is departing from its previous position. *State v. Jackson*, 30 Kan. App. 2d 288, 299, 41 P.3d 871 (2002). Kackley has not demonstrated that the Kansas Supreme Court is departing from its position in *Moore*. Accordingly, we must reject Kackley's claim of error in sentencing.

Affirmed.