NOT DESIGNATED FOR PUBLICATION

No. 119,484

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

WILLIE E. REED JR.,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; BILL KLAPPER, judge. Opinion filed March 6, 2020.
Affirmed.

*Christina M. Kerls*, of Kansas Appellate Defender Office, for appellant.

*Kayla Roehler*, assistant district attorney, *Mark A. Dupree Sr.*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., HILL and GARDNER, JJ.

PER CURIAM: Willie E. Reed Jr. appeals the denial of his K.S.A. 60-1507 motion. He argues that he received ineffective assistance of counsel at trial, on appeal, and in his K.S.A. 60-1507 proceeding. Finding no reversible error, we affirm.

*Factual and Procedural Background*

In January 2009, Reed was charged with two counts of indecent liberties with a child for sexually assaulting two young girls—A.R. and C.T. These charges were brought after both girls participated in interviews at Sunflower House—a children's advocacy

1

center. The State presented videos of these interviews at Reed's trial. In both interviews, the girls stated that they had been assaulted by Reed while they and Reed were clothed.

Reed was represented at trial by James Spies. Spies objected to the admission of the videos as hearsay, but the district court overruled that objection. The videos were admitted and published to the jury before the girls testified.

C.T. described the events that occurred sometime around August 2006 when Reed was invited to her family's home to watch a football game. At some point that day, Reed came into her bedroom while she was reading and began humping her over her clothing. He then went to the bathroom. He then returned to her room, told her to get on the ground so he could see what she was reading, and then humped her again. C.T. waited a couple of weeks after the incident to tell her parents. She then wrote the incident down in her mother's notebook. This note was admitted into evidence.

Similarly, A.R. testified regarding an incident in September 2008, when Reed was invited to her aunt's home to attend a barbeque. While A.R. was in the backyard, Reed put his hand on her shoulder and touched her butt. Reed then pulled her near a vent and touched the front of his pants to her butt. She told Reed to stop and ran away from him. She ran inside and told her aunt what had happened, then went outside and told her brother, and then eventually told her mother. Her mother had her write down what had happened, and this note was also admitted into evidence.

Reed testified, denying the acts that C.T. and A.R. described. His theory was, in part, that the victims and their mothers had colluded to fabricate the charges against him.

The jury convicted Reed of both counts of aggravated indecent liberties with a child.

2

Before sentencing, Reed filed a motion to declare Jessica's Law unconstitutional under both the Kansas and the United States Constitutions. Reed argued that his hard 40 sentence was unconstitutionally disproportionate under the facts of his case. See *State v. Gomez*, 290 Kan. 858, Syl. ¶ 9, 235 P.3d 1203 (2010). At sentencing, Reed's attorney did not present any evidence regarding the constitutionality of Jessica's Law. After arguments, the district court stated it was uncertain whether it should address the constitutionality of the statute, found the issue should be decided by a higher court, and denied Reed's motion. It made no findings specific to the facts of Reed's case, and trial counsel requested none.

Reed had prior convictions for sexual exploitation of a child and indecent liberties with a child. Because of that, the district court sentenced him to life in prison without parole for 40 years under a sentencing law known as Jessica's Law.

Ronald Jurgeson represented Reed on appeal. Jurgeson argued:

- Reed's convictions were not supported by sufficient evidence;
- the trial court erred by admitting the victims' recorded statements and handwritten notes;
- the trial court erred in allowing the prosecutor to ask questions which pointed to Reed's postarrest silence;
- cumulative error warranted reversal; and
- Jessica's Law as applied to Reed constituted cruel and unusual punishment under the Kansas and United States Constitutions.

Our Supreme Court found that Reed's arguments regarding the recorded statements and the constitutionality of Jessica's Law were not preserved for appeal. *State v. Reed*, 300 Kan. 494, 506-08, 513-14, 332 P.3d 172 (2014). The court did, however, address issues regarding sufficiency of the evidence, admissibility of C.T.'s written notes,

3

commission of a *Doyle* violation, and cumulative error. Yet it still could not reach the merits of Reed's argument that his sentence was unconstitutional. Even though Spies had raised that issue at Reed's sentencing hearing, no one had ensured that the district court made proper factual findings and conclusions of law:

> "Reed ignores the fact that he neither objected to the judge's insufficient findings at the hearing, nor subsequently filed a motion under Supreme Court Rule 165 (2013 Kan. Ct. R. Annot. 265) or otherwise asked the sentencing judge to make factual findings.
>
> "In *State v. Seward*, 289 Kan. 715, 721, 217 P.3d 443 (2009), this court made it clear that 'a defendant who wishes to appeal on the basis of a constitutional challenge to a sentencing statute must ensure the findings and conclusions by the district judge are sufficient to support appellate argument, by filing of a motion invoking the judge's duty under Rule 165, if necessary.' See Supreme Court Rule 165. Reed's sentencing took place on October 8, 2010, and his journal entry was filed on October 12, 2010. The *Seward* opinion was filed on October 2, 2009, a full year before Reed's sentencing. A remand for factual findings is not appropriate in this case." 300 Kan. at 514.

After addressing Reed's preserved claims, the Supreme Court affirmed Reed's convictions and sentence. 300 Kan. at 514.

Reed then filed a K.S.A. 60-1507 motion, arguing that both his trial and appellate counsel were ineffective. John Bryant represented Reed in this proceeding. In this motion, Reed argued that his previous attorneys were ineffective for failing to:

- make appropriate objections and requests for redactions to the Sunflower House interviews;
- raise the issue of prosecutorial error in closing arguments; and
- request the findings of fact and conclusions of law necessary to preserve for appellate review his constitutional challenge to his sentence.

4

The district court conducted a hearing and considered these arguments. Although Bryant argued on Reed's behalf, he did not present any testimony or evidence to support his claims. Bryant stated that he felt it was unnecessary to present additional evidence because "Reed . . . put a lot of work into his pro se motion."

The State called Spies to testify at the K.S.A. 60-1507 hearing. Spies explained that he had not asked to redact the parts of the Sunflower House videos where the victims and their mothers spoke together about the allegations because it was part of his defense strategy—he wanted to show that they had colluded to make false accusations against Reed. On cross-examination, however, Spies agreed that a statement like "there's no telling how many other girls this has happened to" would be damaging.

When asked why he had not objected to the State's closing arguments relating to the victims' credibility, Spies said he did not need to, and that not objecting during closing arguments is usually a strategic decision for him. When asked why he had not asked the district court for more specific findings of fact and conclusions of law regarding Reed's constitutional challenge to his Jessica's Law sentence, Spies testified that he thought he had made sufficient arguments and the district court had made sufficient findings, although our Supreme Court held otherwise.

The district court denied Reed's K.S.A. 60-1507 motion, rejecting all of Reed's claims. First, the district court found that the victim's statements in the videos regarding "other girls" did not rise to the level of K.S.A. 60-455 evidence of other crimes or civil wrongs; thus, Spies could not have been ineffective for failing to object to the videos on that ground. The district court found Spies was not ineffective for not raising a *Doyle* violation. (A *Doyle* violation occurs when the State tries to impeach a defendant's credibility at trial by arguing that defendant did not avail himself of the first opportunity to clear his name when confronted by police officers but instead invoked his constitutional right to remain silent. *State v. Marshall*, 50 Kan. App. 2d 838, 846, 334

5

P.3d 866 [2014].) The district court found Spies was not deficient in failing to object to closing argument—it found that the State's closing argument never "specifically refer[ed] to the credibility of the child witnesses and therefore trial counsel had no opportunity or reason to make any objections regarding the witness' credibility." Finally, the district court found that it had already upheld the version of Jessica's Law in effect at the time of Reed's sentencing as constitutional, so Jurgeson could not have been ineffective for failing to argue it was unconstitutional.

Bryant moved the court for additional findings of fact regarding the victim's age in Reed's prior convictions that triggered the hard 40 sentence. Bryant also sought a ruling on the sufficiency of evidence regarding the contact in this case, as raised in Reed's initial petition. The district court denied that motion, and Reed timely appealed it.

Reed then moved to reconsider the district court's decision not to make factual findings regarding the age of the complaining witness in Reed's prior convictions. Reed also moved for leave to amend his motion, arguing that as a part of his ineffective assistance of counsel claims, he had claimed insufficient evidence in relation to the findings of fact and conclusions of law about the lack of skin-to-skin touching. The district court denied these motions, finding they should have been raised earlier.

Reed timely appeals.

*Did the District Court Err in Denying Reed's K.S.A. 60-1507 Motion?*

Reed argues that he received ineffective assistance of trial, appellate, and K.S.A. 60-1507 counsel. He alleges deficient performance of counsel in handling the Sunflower House interviews, the State's closing arguments, and his claim that Jessica's Law is unconstitutional. Reed asks this court to reverse his convictions and remand for a new trial. Alternatively, Reed asks this court to vacate his sentence and remand to the district

6

court for a full hearing to consider his constitutional challenge to his sentence and to make the necessary findings of fact and conclusions of law.

*Standard of Review*

Our standard of review of a K.S.A. 60-1507 decision varies, depending on whether the district court made its decision based only on the record or instead held a hearing. *White v. State*, 308 Kan. 491, 504, 421 P.3d 718 (2018). Where, as here, the district court held an evidentiary hearing, we review the district court's findings of fact to determine whether they are supported by substantial competent evidence and are sufficient to support the court's conclusions of law. But we review the district court's ultimate conclusions of law de novo. *Fuller v. State*, 303 Kan. 478, 485, 363 P.3d 373 (2015). After a preliminary or full evidentiary hearing on a K.S.A. 60-1507 motion, the district court must issue findings of fact and conclusions of law on all issues presented. Supreme Court Rule 183(j) (2019 Kan. S. Ct. R. 228). Whether the district court's findings of fact and conclusions of law comply with Rule 183(j) is a question of law we review de novo. *Robertson v. State*, 288 Kan. 217, 232, 201 P.3d 691 (2009).

I. *Claims against trial counsel*

We first address Reed's individual claims against each of his three attorneys. We then address Reed's claims relating to the constitutionality of Reed's hard 40 sentence, which Reed asserts against all three counsel.

"To prevail on a claim of ineffective assistance of trial counsel, a criminal defendant must establish (1) that the performance of defense counsel was deficient under the totality of the circumstances, and (2) prejudice, i.e., that there is a reasonable probability the jury would have reached a different result absent the deficient performance. *Sola-Morales v. State*, 300 Kan. 875, 882, 335 P.3d 1162 (2014) (relying on

7

*Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674, *reh. denied* 467 U.S. 1267 [1984])." *State v. Salary*, 309 Kan. 479, 483, 437 P.3d 953 (2019).

> "The test has nothing to do with what the best lawyers or what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted. The issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.' *United States v. Cronic*, 466 U.S. 648, 665 n.38, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984). So we are not interested in grading lawyers' performances—we are interested in whether the adversarial process at trial worked adequately." *Stotts v. State*, No. 117,289, 2018 WL 6071891, at *3 (Kan. App. 2018) (unpublished opinion).

Judicial scrutiny of counsel's performance in a claim of ineffective assistance of counsel is highly deferential and requires consideration of all the evidence before the judge or jury. The reviewing court must strongly presume that counsel's conduct fell within the broad range of reasonable professional assistance. See *State v. Kelly*, 298 Kan. 965, 969-70, 318 P.3d 987 (2014).

A. *Reed shows no error from Spies' failure to object to the videos as cumulative.*

We first address Reed's claim that his trial counsel was ineffective for failing to properly object to or redact portions of the videos of the victims' Sunflower House interviews. Reed argues that Spies should have objected to the Sunflower House Interviews as cumulative and prejudicial and that Spies should have requested redaction of A.R's statement, "No telling there's no other girls, she didn't even know there was me."

In contending that Spies was ineffective for not objecting to the Sunflower House videos as cumulative, Reed relies solely on Spies' testimony. Spies testified that he generally believed all Sunflower House videos were "overly cumulative and overly prejudicial to the defendants because it just overly bolsters the child victim." This shows

8

Spies' subjective belief, yet does not show his decision was objectively unreasonable. A court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. *Baker v. State*, 243 Kan. 1, 7, 755 P.2d 493 (1988) (quoting *Strickland*, 466 U.S. at 690). Spies testified that, in Reed's case, he wanted the videos to be admitted because they supported his collusion theory, which was part of his trial strategy. Strategic decisions made after a thorough investigation of law and facts relevant to realistically available options are virtually unchallengeable. *State v. Cheatham*, 296 Kan. 417, 437, 292 P.3d 318 (2013).

But even if we assume, without finding, that Spies erred in not voicing this objection at trial, Reed fails to show any prejudice. Instead, he merely argues that "there is a reasonable probability that had Mr. Spies made the appropriate objections and requests for redactions in the district court, the Supreme Court would have addressed the merits of his appellate issue." But Reed's burden is to show a reasonable probability the jury would have reached a different result absent the error. To meet that burden, Reed must show that the district court would likely have sustained a cumulative or prejudicial objection and then show the determinative effect the absence of that evidence would have had on the jury's verdict. See *Sola-Morales*, 300 Kan. at 882.

Reed fails to show that the district court would likely have sustained a cumulative or prejudicial objection. Instead, the State shows that it likely would *not* have done so, citing *State v. Kackley*, 32 Kan. App. 2d 927, 935, 92 P.3d 1128 (2004). *Kackley* found that repetitious testimony regarding sex victim's statements "is characteristic in the prosecution of child sex crimes and generally draws no objection." 32 Kan. App. 2d at 935. It held that the rape exception to the general rule against the admission of prior consistent statements "could logically extend to prosecutions for sexual abuse of children, including indecent liberties cases." 32 Kan. App. 2d at 935. Reed fails to address this law or provide any other authority for his position. Applying *Kackley*, the district court likely

9

would have overruled an objection that the Sunflower House videos were cumulative. Thus, we find no reasonable probability that the jury would have reached a different result had Spies objected to the videos as cumulative or unfairly prejudicial.

B. *Not requesting redactions was part of Spies' trial strategy.*

Reed next argues that Spies should have requested redaction of A.R.'s statement, "No telling there's no other girls, she didn't even know there was me," from the video of her Sunflower House interview. The State counters that Spies' choice not to have the video redacted was a part of his trial strategy and is thus, virtually unchallengeable.

At the K.S.A. 60-1507 motion hearing, Spies testified that he did not object to the Sunflower House videos because that was his trial strategy. He believed the videos showed that the victims and their mothers had colluded to set Reed up. Spies testified that he made a strategic decision not to ask for redactions "because it was definitely our trial strategy to convince the jury that there was—again, collusion between the two victims to kind of get their story straight or to make these allegations against Mr. Reed." Spies' trial strategy was a general denial coupled with collusion. The fact he did not try to redact A.R.'s statement is consistent with that strategy.

Reed counters that Spies admitted on cross-examination at the K.S.A. 60-1507 hearing that his lack of objection to A.R.'s statement did *not* align with his trial strategy. We disagree. At that hearing, Spies was not asked about the statement A.R. made in the video. Instead, Reed's attorney asked Spies whether the statement, "[T]here's no telling how many other girls this has happened to," would be damaging testimony—Spies agreed that it would. But we find the attorney's hypothetical and clear statement quite dissimilar to the confusing and vague statement A.R. actually made—"[n]o telling there's no other girls, she didn't even know there was me." Reed fails to show that Spies erred in not seeking to redact this statement.

10

C. *Reed shows no error in Spies not objecting to the videos as K.S.A. 60-455 evidence.*

Reed also contends that A.R.'s statement in the video—"[n]o telling there's no other girls, she didn't even know there was me"—suggested to the jury that Reed had victims other than A.R. and C.T. He then argues that this statement was inadmissible under K.S.A. 60-455 and that Spies erred in failing to object to it on that basis.

The district court found this statement failed to show that Reed committed another crime or civil wrong. We agree. The meaning of this statement is unclear—it could reasonably be interpreted, as the State alleges, as merely a quizzical expression of one victim's disbelief that another victim existed. But even if the statement somehow implies that other victims exist, the statement is too general to fall within K.S.A. 60-455's prohibition of "evidence that a person committed a crime or civil wrong *on a specific occasion*." (Emphasis added.) Reed does not argue that this statement, under any interpretation, asserts that Reed did anything on a specific occasion.

Reed mentions that this same statement was inadmissible speculation, but he fails to brief that argument. We deem it abandoned. See *State v. Boleyn*, 297 Kan. 610, 633, 303 P.3d 680 (2013).

II. *Claims against appellate counsel*

Reed argues that Jurgeson's failure to raise the issue of prosecutorial error on appeal deprived him of his constitutional right to effective assistance of counsel and to a fair trial. Reed contends that Jurgeson should have argued that the State improperly commented on the credibility of its witnesses during its closing argument. Yet Reed concedes that trial counsel, Spies, was not ineffective for failing to object to the

11

prosecutor's closing argument during trial because it was his strategic decision not to do so. See *Cheatham*, 296 Kan. at 437.

A.  *Preservation*

Reed notes that prosecutorial error may be properly raised on direct appeal, despite lack of a contemporaneous objection at trial. We agree. See *Bledsoe v. State*, 283 Kan. 81, 88, 150 P.3d 868 (2007). So Jurgeson may raise this issue on appeal even though Spies did not object to the prosecutor's statements during closing argument. Appellate courts will review a prosecutorial error claim based on a prosecutor's comments made during closing argument even without a timely objection, but the court may figure the presence or absence of an objection into its analysis of the alleged error. *State v. Butler*, 307 Kan. 831, 864, 416 P.3d 116 (2018); see *State v. McBride*, 307 Kan. 60, 64-65, 405 P.3d 1196 (2017).

But this is not a direct appeal—it is a collateral proceeding. Our Supreme Court has held that prosecutorial error "is not properly raised in a collateral proceeding under K.S.A. 60-1507 unless it affected a constitutional right and there is a showing of exceptional circumstances excusing the failure to appeal on that issue." *Bledsoe*, 283 Kan. at 88. Reed can overcome this procedural barrier by persuading this court there was "ineffective assistance of direct appeal counsel in failing to raise the issue." 283 Kan. at 88-89. So Reed must show that Jurgeson's failure to raise the issue of prosecutorial error on direct appeal constituted deficient performance that prejudiced his appeal to the extent that there is a reasonable probability that, but for the deficient performance, the appeal would have been successful. See *Miller v. State*, 298 Kan. 921, 934, 318 P.3d 155 (2014).

B. *Which statements do we consider?*

Before we reach the merits of this issue, we must determine which of the prosecutor's statements we review—only one, as the State urges, or all six of the statements Reed briefs on appeal. The State argues that Reed preserved only one statement for appellate review—"You have an abundance of evidence that indicates that both [C.T. and A.R.] were entirely credible about what they said happened." Reed counters that the court should consider these additional statements by the prosecutor in closing argument:

- "So I want to talk to you about each girl and the evidence you've heard that leads you to believe that it absolutely happened the way they said it did."
- "[Y]ou saw [C.T.] on the stand and she cried. That's not a manufactured emotion. That's a little girl experiencing something, telling someone about it that affected her."
- "And again, [A.R.] came and testified here in court. You judged her demeanor. She's a cute kid. They both are, and I'm not asking you to have sympathy for them because they're kids, but I am asking you to understand that children came in to tell you what happened and spoke before 13 strangers. That's got to count for something."
- "If you know the interviews, even if they weren't perfect, they sure as heck weren't bad."
- "Mr. Spies would love for you to believe otherwise, and he's doing his job. You know he's doing what he's supposed to do. But he doesn't have a whole lot to work with. And why?

   "Because there are two girls, two years apart, two crimes of almost identical character and one suspect between the two of them. That's not coincidence. That's not happenstance. That's not guess work. That is truth."

13

We cannot tell which statements the district court reviewed in finding no error, as its decision does not specify any particular statements by the prosecutor.

So we look to see which statements Reed argued in his K.S.A. 60-1507 motion. We find that Reed's motion addressed only the one statement, not all six. A K.S.A. 60-1507 movant is presumed to have listed all grounds for relief. *State v. Trotter*, 296 Kan. 898, 904, 295 P.3d 1039 (2013). K.S.A. 60-1507 directs movants to "[s]tate concisely *all the grounds* on which you base your allegation that you are being held in custody unlawfully." (Emphasis added.) And Reed's counsel did not argue any other instances of prosecutorial misconduct at the K.S.A. 60-1507 hearing. Issues not raised before the district court, including constitutional issues, cannot be raised for the first time on appeal. See *State v. Daniel*, 307 Kan. 428, 430, 410 P.3d 877 (2018). Although there are exceptions to that general rule, *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014), Reed does not assert an exception or explain why it applies. See Supreme Court Rule 6.02(a)(5) (2019 Kan. S. Ct. R. 34); *State v. Williams*, 298 Kan. 1075, 1085-86, 319 P.3d 528 (2014). We thus confine our review to this one statement Reed preserved:  "So you have an abundance of evidence that indicates that both [C.T. and A.R.] were entirely credible about what they said happened."

C.  *Standard of Review*

In *State v. Sherman*, 305 Kan. 88, 378 P.3d 1060 (2016), our Supreme Court revamped the concept of prosecutorial error. Under *Sherman*'s framework, we apply a two-step process:  error and prejudice. *Sherman*, 305 Kan. at 109.

> "To determine whether prosecutorial error has occurred, the appellate court must decide whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial. If error is found, the

14

appellate court must next determine whether the error prejudiced the defendant's due process rights to a fair trial. In evaluating prejudice, we simply adopt the traditional constitutional harmlessness inquiry demanded by *Chapman* [*v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)]. In other words, prosecutorial error is harmless if the State can demonstrate 'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict.' [Citation omitted.]" *Sherman*, 305 Kan. at 109.

See *State v. Blansett*, 309 Kan. 401, 412, 435 P.3d 1136 (2019).

D. *Analysis*

Reed alleges his appellate attorney, Jurgeson, was constitutionally ineffective for not arguing on appeal that the State had reversibly erred by commenting on witnesses' credibility during closing arguments.

Our Supreme Court has consistently stated that it is "improper for a prosecutor to attempt to bolster the credibility of the State's witnesses." *State v. Sprague*, 303 Kan. 418, 428, 362 P.3d 828 (2015). But a prosecutor may explain what juries should look for in determining credibility: "The latitude given to the State includes 'explaining to juries what they should look for in assessing witness credibility, especially when the defense has attacked the credibility of the State's witnesses.' *McReynolds*, 288 Kan. at 325." 303 Kan. at 428-29.

The State's case against Reed hinged on the credibility of the two victims. Similarly, Reed's defense was based on his credibility—he denied the acts the victims testified to. The prosecutor began its discussion about the victims' credibility by speaking directly to the jury about this issue: "What you have to decide, then, is do you believe it happened as the girls told you?"

15

"When a case develops that turns on which of two conflicting stories is true, it may be reasonable to argue, based on evidence, that certain testimony is not believable. However, the ultimate conclusion as to any witness' veracity rests solely with the jury." *State v. Pabst*, 268 Kan. 501, 507, 996 P.2d 321 (2000). A prosecutor is not to state a personal opinion about a witness' credibility. 268 Kan. at 506 (quoting Kansas Rule of Professional Conduct 3.4 [1999 Kan. Ct. R. Annot. 369-70]). Thus, in *Pabst*, the Supreme Court found reversible error when the prosecutor repeatedly told the jury the defendant "was lying." 268 Kan. at 511. But "[a] prosecutor may comment on the credibility of a witness, provided that the comment is not based upon the prosecutor's personal opinion." *Duran v. State*, No. 96,178, 2008 WL 2571788, at *9 (Kan. App. 2008) (unpublished opinion).

The prosecutor's statement here, "So you have an abundance of evidence that indicates that both [C.T. and A.R.] were entirely credible about what they said happened," followed the prosecutor's summary of testimony about the location of Reed's offense against A.R. and specific details of that offense. Viewed in context, the comment was not based on the prosecutor's personal opinion but asked the jury to determine that the evidence showed the victims' credibility. This is permissible. "In criminal trials, the prosecution is given wide latitude in language and in manner or presentation of closing argument as long as the argument is consistent with the evidence." *Pabst*, 268 Kan. at 505.

Reed also briefly argues that the statement improperly bolstered the victims' credibility. We find this comment did not cross that line. Compare *State v. Mosley*, 25 Kan. App. 2d 519, 524-25, 965 P.2d 848 (1998) (finding improper bolstering of the State's witnesses when the prosecutor claimed, "'[M]y witnesses were telling the truth.'").

16

III. *Claims against all three counsel*

We finally reach Reed's claim that all three of his attorneys were ineffective in handling his claim that his sentence was unconstitutional.

In his K.S.A. 60-1507 motion, Reed argued that Spies and Jurgeson were ineffective in handling his constitutional challenge to his sentence because neither requested the necessary findings of fact and conclusions of law from the district court. Reed also claimed that because his crimes did not involve skin-to-skin contact or aggressive behavior, his sentence was unconstitutionally cruel or unusual. Reed also asserted that his prior conviction was not one that should have triggered a life sentence without possibility of parole for 40 years. In his supplemental K.S.A. 60-1507 motion, Bryant asked for an evidentiary hearing before the sentencing judge so it could enter the appropriate findings of fact and conclusions of law. And Spies had also requested leave to amend Reed's original motion to address the no skin-to-skin contact issue. Now, on appeal from the district court's denial of his K.S.A. 60-1507 motion, Reed argues that he received ineffective assistance of trial, appellate, and K.S.A. 60-1507 counsel with regard to his claim that his sentence was unconstitutional.

When a prisoner requests relief under K.S.A. 60-1507 on the basis of ineffective assistance of appellate counsel, the movant bears the burden of proving: (1) that appellate counsel's performance fell below an objective standard of reasonableness, and (2) "'the appellant was prejudiced to the extent that there is a reasonable probability that, but for counsel's deficient performance, the appeal would have been successful.'" *Laymon v. State*, 280 Kan. 430, 437, 122 P.3d 326 (2005). As applied here, Reed must show not only deficient performance, but also a reasonable probability that, but for that deficient performance, his claim that his sentence was unconstitutional would have succeeded.

17

*The governing law*

Before Reed's sentencing hearing, Spies filed a motion to declare the version of Jessica's law in effect at the time—K.S.A. 21-4643—unconstitutional. He argued that the imposition of life sentences without the possibility of parole for 40 years, under the circumstances of his case, was cruel and/or unusual punishment under § 9 of the Kansas Constitution Bill of Rights and the Eighth Amendment to the United States Constitution. He argued that his sentence constituted cruel and unusual punishment because its length was disproportionate to his offense.

To determine whether a sentence's length is unconstitutionally disproportionate to the crime for which that sentence is imposed, Kansas courts consider three factors commonly known as the *Freeman* factors:

> "'(1) The nature of the offense and the character of the offender should be examined with particular regard to the degree of danger present to society; relevant to this inquiry are the facts of the crime, the violent or nonviolent nature of the offense, the extent of culpability for the injury resulting, and the penological purposes of the prescribed punishment;
>
> "'(2) A comparison of the punishment with punishments imposed in this jurisdiction for more serious offenses, and if among them are found more serious crimes punished less severely than the offense in question the challenged penalty to that extent is suspect; and
>
> "'(3) A comparison of the penalty with punishments in other jurisdictions for the same offense.'" *State v. Mossman*, 294 Kan. 901, 908, 281 P.3d 153 (2012) (quoting *State v. Freeman*, 223 Kan. 362, 367, 574 P.2d 950 [1978]).

No one factor is individually controlling and "'consideration should be given to each prong of the test,'" but one factor may "'weigh so heavily that it directs the final conclusion.'" 294 Kan. at 908 (quoting *State v. Ortega-Cadelan*, 287 Kan. 157, 161, 194 P.3d 1195 [2008]). When considering proportionality, "'the factual aspects . . . are a

18

necessary part of the overall analysis.'" 294 Kan. at 908 (quoting *Ortega-Cadelan*, 287 Kan. at 161). The first *Freeman* factor is "inherently factual" because it requires examining "the facts of the crime and the particular characteristics of the defendant." *Ortega-Cadelan*, 287 Kan. at 161. The second and third *Freeman* factors, however, are "legal determinations." 287 Kan. at 161.

### A. *Ineffective assistance of trial counsel*

Reed contends that Spies was ineffective in handling his constitutional challenge to his sentence because he failed to request the necessary findings of fact and conclusions of law from the district court. Reed also argues that Spies was deficient in not presenting evidence to support the constitutional challenge. But Reed did not raise that issue in his K.S.A. 60-1507 motion or his supplemental motion, and he fails to cite to the record where this issue was preserved. See Rule 6.02(a)(4) (2019 Kan. S. Ct. R. 34). We thus consider only Reed's claim that Spies failed to request the necessary findings of fact and conclusions of law.

### *Deficient performance*

Before Spies moved to find Jessica's Law unconstitutional and before Reed was sentenced, our Supreme Court decided *State v. Seward*, 289 Kan. 715, 217 P.3d 443 (2009), *disapproved of on other grounds by State v. Jolly*, 301 Kan. 313, 342 P.3d 935 (2015). In *Seward*, a defendant challenged his sentence as unconstitutional but the district court did not make any findings regarding the *Freeman* factors. Our Supreme Court found that the lack of findings precluded appellate review and remanded to the district court to make the necessary findings of fact and conclusions of law. 289 Kan. at 721.

But the court warned future litigants not to rely on a remand:

"We emphasize that we believe this case to be exceptional. In the future, a defendant who wishes to appeal on the basis of a constitutional challenge to a sentencing statute must ensure the findings and conclusions by the district judge are sufficient to support appellate argument, by filing of a motion invoking the judge's duty under Rule 165, if necessary." *Seward*, 289 Kan. at 721.

Our Supreme Court applied this rule in Reed's direct appeal—it declined to review Reed's constitutional challenge because he had failed to ensure the district court made adequate findings and conclusions of the *Freeman* factors:

"Reed argues that when '[v]iewed on a continuum of other cases involving the crime of Aggravated Indecent Liberties with a Child, the acts in this case are far less egregious than the typical case.' He lists various factors that he believes should minimize his punishment. Specifically, Reed argues that his actions against C.T. and A.R. were not violent, and his encounter with each girl was 'short in duration.' Reed recognizes that he was a registered sex offender at the time of the offenses in this case but attempts to diminish this fact by arguing, with no citations to the record, that his past convictions 'nvolved consensual sexual contact with a 15-year-old girl.' In addition, Reed argues that he was a 'hard-working husband and father' and was 'gainfully and steadily employed' at the time of trial; again, he does not provide citations to the record to support these assertions." *Reed*, 300 Kan. at 512-13.

Thus, it is incumbent on counsel to assure that the district court's findings and conclusions are sufficient.

At Reed's K.S.A. 60-1507 hearing, Spies testified that he thought he had made sufficient arguments at Reed's sentencing hearing about Reed's constitutional challenge to his sentence and that the district court had made sufficient findings, even though our Supreme Court held otherwise. See *Reed*, 300 Kan. at 513. The district court had generally acknowledged, then summarily rejected Reed's argument of unconstitutionality:

"I certainly understand your argument and your contention as to the constitutionality of this. I don't know that it is appropriate at this level to declare this constitutional or not. I think it is something that would be—is being addressed at the Appellate Court level, whether that's the Court of Appeals or the Supreme Court and, you know, I don't know that it is within this Court's purview to take this stand, so while I recognize your arguments and think it is something that should be at least determined by a higher court, at this point I'm denying the motion to declare the—Jessica's Law unconstitutional."

This general ruling was not sufficient to allow appellate review of Reed's claim of unconstitutionality. And *Seward*'s 2009 warning was well established by the date of Reed's sentencing hearing in 2010. We thus find deficient performance in Spies' failure to ensure that the findings and conclusions by the district judge were sufficient to support appellate argument.

### *Prejudice*

Having found deficient performance, we ask whether this deficient performance prejudiced Reed. Reed's only argument of prejudice is that the failure to present evidence and request specific findings of fact and conclusions of law "deprived [him] the process due on his constitutional challenge to his sentence."

But in a similar case, we have found this kind of showing insufficient for a K.S.A. 60-1507 that alleges failure to preserve a disproportionality challenge:

"In the context of the challenge brought here, Cervantes-Puentes must show not only that absent his counsel's deficient performance the merits of his claim would have been preserved on direct appeal but also that, but for counsel's error, the result of his direct appeal would have been different. That means Cervantes-Puentes must show a reasonable probability that his case-specific challenge to the disproportionality of his sentence would have succeeded. See *Miller v. State*, 298 Kan. 921, 934, 318 P.3d 155 (2014). It is not sufficient, as Cervantes-Puentes claims, merely to show a reasonable probability that his

21

case-specific challenge would have been preserved and thus reviewed on its merits by the Supreme Court, absent counsel's deficient performance." *Cervantes-Puentes v. State*, No. 113,358, 2016 WL 463820, at *4 (Kan. App. 2016) (unpublished opinion).

Because this rationale is sound, we apply it here. To show prejudice, Reed must show a reasonable probability that his case-specific challenge to the disproportionality of his sentence would have succeeded, but for counsels' errors.

Yet Reed makes no effort to make that showing, having placed all his eggs in the due process basket. In arguing prejudice, Reed does not make any arguments or cite any authority in support of his contention that Jessica's Law was unconstitutional at the time of his sentencing. He does not address the *Freeman* factors which a court must consider in determining proportionality. Reed's claims of lack of skin-to-skin contact or the lack of aggression do not establish a categorical challenge. See *State v. Cervantes-Puentes*, 297 Kan. 560, 566, 303 P.3d 258 (2013) (declining to consider a purported categorical claim that, in reality, presents a case-specific proportionality challenge to a term-of-years sentence, citing cases). Yet Reed does not cite any authority to support his assertion that the lack of skin-to-skin contact or the lack of aggression makes Jessica's law unconstitutional as applied to him. Nor does he try to address that the State's cited authority to the contrary—see *Cervantes-Puentes*, 297 Kan. at 562, 565-66 (rejecting claims of disproportionality where defendant committed a sexual offense against a minor in public when both were fully clothed and the offense does not involve penetration, force, or coercion). Reed never proffered an affidavit or any other evidence setting forth whatever facts he believes Spies should have presented to the district court to meet the factual showing required by the first *Freeman* factor, relating to the facts of the crime and the particular characteristics of the defendant. For all these reasons, Reed fails to establish the prejudice necessary for his ineffective assistance of counsel claim.

22

A. *Ineffective Assistance of Appellate Counsel*

Next, Reed argues that Jurgeson was ineffective on direct appeal for failing to move to remand Reed's case to the district court for more specific findings—before filing his appellate brief—so that his argument on appeal could be supported by a sufficient record. Reed did not, however, raise this issue to the district court.

But even if we assume that Reed's current claim is preserved and further assume, without finding, that Jurgeson's acts constituted deficient performance, we find no prejudice from Jurgeson's failure to move to remand for more specific findings. First, our Supreme Court addressed Reed's claim on direct appeal as if Jurgeson had sought a remand order with directions to require the district court make sufficient findings of fact and conclusions of law. It found: "Reed essentially asks this court to make the necessary factual findings or to remand the case to the district court for the same." *Reed*, 300 Kan. at 513. So even though Jurgeson did not move to remand, the Supreme Court treated Reed's appeal as though Jurgeson had timely done so.

Second, to show prejudice, Reed must show that Jurgeson's failure to move to remand for specific findings prejudiced his appeal to the extent that there is a reasonable probability that, but for that failure, his appeal would have been successful. See *Miller,* 298 Kan. at 934. Yet Reed has not tried to show what findings could have been made on remand that would have probably caused the court to find on direct appeal that his sentence was unconstitutional. Thus, as detailed above for Reed's claims against Spies, Reed has shown no prejudice from Jurgeson's approach on direct appeal.

B. *Ineffective Assistance of K.S.A. 60-1507 Counsel*

Reed argues that Bryant provided ineffective assistance as K.S.A. 60-1507 counsel because "he failed to present evidence to support the argument that [Reed's] sentence was

unconstitutional, which was necessary to establish prejudice on the ineffective assistance of trial and appellate counsel claims, and because he failed to fully understand the nature of Reed's challenge."

For purposes of expediency, we assume that both of these claims are preserved. We further assume, without finding, that Bryant's acts alleged above constitute deficient performance. But again, we find no prejudice. As above, Reed's only claim of prejudice is that he did not get a hearing on his claim of an unconstitutional sentence. And as above, Reed makes no attempt to show what evidence Bryant should have presented at that K.S.A. 60-1507 hearing that might have led the district court to conclude that Reed's sentence was unconstitutional. Reed had the opportunity to testify at his K.S.A. 60-1507 hearing to enable the district court to make proper factual findings, but he chose not to. For these reasons, we find no ineffective assistance of K.S.A. 60-1507 counsel.

Because Reed has not shown ineffective assistance of any of his counsel, the district court properly denied his K.S.A. 60-1507 motion.

Affirmed.