226 Kan. 768 (1979)
602 P.2d 1377
STATE OF KANSAS, Appellee,
v.
GEORGE ANDREW WASHINGTON, JR., Appellant.
No. 51,016
Supreme Court of Kansas.
Opinion filed December 1, 1979.
Robert M. Brown, of Topeka, argued the cause and was on the brief for the appellant.
Joan M. Hamilton, assistant district attorney, argued the cause, and Robert T. Stephan, attorney general, and Gene M. Olander, district attorney, were with her on the brief for the appellee.
The opinion of the court was delivered by
McFARLAND, J.:
Defendant George Andrew Washington, Jr., was convicted by a jury of kidnapping (K.S.A. 21-3420); rape (K.S.A. 1978 Supp. 21-3502); and unlawful possession of a firearm (K.S.A. 21-4204[1][b]). He was charged with aggravated kidnapping (K.S.A. 21-3421), but was convicted of kidnapping as a lesser included offense. Defendant appeals his convictions.
Defendant and the victim were acquainted with each other and both were employees of a Ramada Inn Motel in Topeka. By agreement the two drove to Lawrence and back in defendant's automobile on the evening of October 23, 1978. The victim testified that upon their return to Topeka defendant forced her, at gunpoint, to accompany him to a Topeka motel, where she was raped by defendant. Additional facts will be included under the various issues as needed.
I. SUPPRESSION OF EVIDENCE
On the evening of October 24, 1978, the victim reported the *769 crime to the Topeka police department. She gave Detective Mogge the name of the defendant and a description of his vehicle. The detective then put out that information in a bulletin to all cars. In response thereto, another officer, Sergeant Weckwerth, contacted Mogge and provided the information that defendant was a tenant in a trailer court managed by the officer. He stated the tag number of defendant's vehicle and that it was presently parked in the trailer court. Weckwerth was keeping the vehicle under surveillance and he was advised to stop the vehicle if it moved.
The victim had also advised Mogge that present in the vehicle the evening before were a gun, a bottle of Jack Daniels whiskey, and some green vegetation. An assistant district attorney prepared an affidavit for a search warrant. Detective Mogge was enroute to a judge's home to secure the search warrant when he received a call from Weckwerth that defendant had returned to the vehicle and was driving away. Weckwerth followed the vehicle to a Kwik Shop where it stopped. He approached defendant and had him step out of the vehicle. The car door was left open by defendant and the gun case containing the gun was in plain view on the floor board, protruding from under the driver's seat. Weckwerth seized the gun, whiskey, and some green vegetation from the vehicle. Mogge, meanwhile, arrived at the judge's home and secured the search warrant. The seizure apparently occurred slightly before the judge signed the warrant. While Mogge was still at the judge's home he was advised of the seizure. Mogge advised the dispatcher to tow the vehicle to the police station. Mogge searched the vehicle at the station and found additional green vegetation. At the time Weckwerth seized the items he did not know the particular items being sought, only that defendant was a suspect in a rape case and was probably armed. Inasmuch as Weckwerth personally knew defendant, there was no question that defendant was the man being sought.
Defendant contends the trial court erred in overruling his motion to suppress the gun, whiskey, and green vegetation seized by Weckwerth, on the basis the items were seized without probable cause and without a search warrant.
Detective Mogge knew the particular items being sought and had probable cause to stop the vehicle. While Mogge was securing the search warrant he was also directing Weckwerth's activities. *770 The fact Mogge had not relayed all his information to Weckwerth does not alter the situation. The officers herein were working in close concert with each other and the knowledge of one is the knowledge of both in determining whether probable cause existed for the action of one of the officers. See United States v. Stratton, 453 F.2d 36 (8th Cir.), cert. denied 405 U.S. 1069 (1972); White v. United States, 448 F.2d 250 (8th Cir.1971), cert. denied 405 U.S. 926 (1972); United States v. Woods, 544 F.2d 242, 259-260 (6th Cir.1976), cert. denied 430 U.S. 969 (1977); United States v. Trabucco, 424 F.2d 1311, 1315 (5th Cir.1970). Under the circumstances herein, the trial court did not err in overruling defendant's motion to suppress.
II. RUTH STROHMEYER TESTIMONY
Ruth Strohmeyer was an assistant manager at the Ramada Inn and knew both the victim and defendant. The crimes occurred the night of October 23 and early morning hours of October 24, 1978. Early in the morning of October 24, the victim contacted Ms. Strohmeyer and told her what had happened, and they arranged to meet about 5:30 that evening. Shortly after the meeting the victim reported the crime to the police, after being driven to the police station by Ms. Strohmeyer and the motel manager.
Defendant objected to the Strohmeyer testimony on the ground it was incompetent, immaterial and prejudicial. On appeal he contends it was improperly admitted to bolster the victim's testimony.
While as a general rule the testimony of a witness cannot be bolstered or supported by showing she has made prior consistent out of court statements, there are limitations and exceptions, including that for rape prosecution. See 81 Am.Jur.2d, Witnesses §§ 641-644. 65 Am.Jur.2d, Rape § 76, p. 805, states:
"As a general rule, hearsay evidence is incompetent and inadmissible to establish a fact, but the admission of evidence of the complaint of the victim in a rape prosecution is an exception to the hearsay rule. Thus the courts are unanimous in holding that in prosecutions for rape and assault with intent to commit rape, the fact that the prosecutrix made a complaint shortly after the offense can be shown either through her testimony or through the testimony of other witnesses. Evidence of the complaint may be shown for the purpose of corroborating the testimony of the prosecutrix, but not as independent evidence of the offense charged, unless made in extremis.
"Evidence of the failure of the woman to complain, or of a delay in making the complaint, is a circumstance which tends to discredit the victim's testimony."
*771 The victim returned home about 2:30 a.m. on October 24, 1978, and did not report the crime to the police until approximately 7:00 o'clock that evening. No error is shown in the admission of the testimony as to conversations with the victim.
Defendant also claims error in the admission of Ms. Strohmeyer's testimony that she was "scared to death" of defendant. To determine this point it is necessary to place the testimony in context. The witness testified as to her conversations with the victim. Defendant cross-examined the witness, wherein the following occurred:
"Q Well, let's go to, say, Wednesday morning, the day of the 24th [sic]. Did you have a conversation with Kathy Washington [defendant's wife] at that time?
"A It's possible. I don't remember.
"Q And was the substance of that conversation that Kathy told you that he had been arrested for rape, and you said this is the first you've ever heard about it?
"A Yes.
"Q Or words to that effect?
"A That's right.
"Q You did have that conversation?
"A Yes, I recall.
"MR. BROWN: That's all I have.
REDIRECT EXAMINATION
BY MR. WURTZ:
"Q Why was that you told the defendant's wife that this was the first you had heard about it?
"A Because I'm scared to death of George."
Defendant was apparently trying to impeach the witness by showing a prior inconsistent statement. Defendant opened the door to this line of testimony and the State had the right to cross-examine the witness on the subject. The extent of cross-examination in such instances lies largely within the discretion of the trial court. See State v. Burnett, 221 Kan. 40, 44, 558 P.2d 1087 (1976).
No abuse of discretion is shown.
III. UNLAWFUL POSSESSION OF A FIREARM
Defendant contends the trial court erred in overruling his motion to discharge on Count 3 and his motion to quash Count 3.
K.S.A. 21-4204 provides:
"(1) Unlawful possession of a firearm is:
....
"(b) Possession of a firearm with a barrel less than twelve (12) inches long by a person who, within five (5) years preceding such violation has been convicted of a felony under the laws of Kansas or any other jurisdiction or has been released from imprisonment for a felony."
*772 Count 3 of the information is:
"Count 3: UNLAWFUL POSSESSION OF A FIREARM
K.S.A. 21-4204(1)(b)
On or about the 24th day of October, 1978, in the County of Shawnee and State of Kansas, George Andrew Washington, Jr., did then and there unlawfully, feloniously and willfully, possess a firearm with a barrel less than twelve (12) inches long, within five years after his release from the Kansas State Penitentiary, Lansing, Kansas, on September 15, 1975, contrary to the form of the statutes in such case made and provided and against the peace and dignity of the State of Kansas."
Defendant contends the information as to Count 3 is fatally defective as it does not state an offense by virtue of the failure to allege the release was from imprisonment "for a felony."
If the facts alleged in an information do not constitute an offense within the terms and meaning of the statute upon which it is based, the information is fatally defective. State v. Howell & Taylor, 226 Kan. 511, 601 P.2d 1141 (1979).
In determining the sufficiency of an information the exact words of the statute are not required.
"The sufficiency of indictments and informations is now governed by the guidelines of K.S.A. 22-3201(2). This court has repeatedly held that an information which charges an offense in the language of the statute or its equivalent is sufficient. [Citations omitted.] The exact statutory words need not be used in the information if the meaning is clear." State v. Lucas, 221 Kan. 88, 89, 557 P.2d 1296 (1976).
The trial court noted that defendant "wouldn't have been in the penitentiary if he hadn't been convicted of a felony" and overruled the motions. Incarceration in the Kansas State Penitentiary, of necessity, requires conviction of a felony.
The court permitted the State to reopen its case to prove the felony and defendant objected thereto. Defendant ultimately stipulated that he "was released from the Kansas State Penitentiary on September 5th, 1975, where he was imprisoned for a felony."
No error is shown.
IV. EVIDENTIARY RESTRICTIONS
The victim testified that she had had no prior sexual relationships with defendant. Her testimony was that, at her request, defendant had agreed to drive her to an AmWay meeting in Lawrence. She denied knowing an individual by the name of Mark Herd.
*773 Defendant filed a pretrial motion to permit evidence of prior sexual activity between himself and the victim. This was sustained. Pursuant to this motion, evidence was admitted as follows:
1. Defendant testified that he had dated the victim on several occasions and had also "propositioned" her;
2. Defendant testified he and the victim had prior consensual sexual relations in the apartment of a Mr. Henry;
3. Henry testified the two had been in his apartment on the prior occasion; and
4. Another witness testified she had seen defendant and the victim together at a shopping center on a prior occasion.
Defendant sought to establish a different purpose for the trip to Lawrence. He testified that he arranged a "date" for the victim and Mark Herd in Lawrence and he was taking her there for the date. Defendant testified he had on other occasions given the victim money, pills and marijuana. William Dixon testified he was supposed to arrange for the victim and Herd to meet in Lawrence to take care of the victim's business with Herd. Dixon testified he talked to the victim in Lawrence on the night in question and she told him she was there to meet Mark Herd. All testimony referred to in this paragraph was admitted without objection by the State.
Two lines of testimony were excluded by the trial court. The first related to proffered testimony of defendant that he had on prior occasions arranged dates between the victim and other men. The claimed purpose of the testimony was for corroboration of his testimony as to the reason for the Lawrence trip. The trial court excluded the testimony on the basis that it was evidence of prior sexual activities contrary to K.S.A. 60-447a.
The second line of proffered testimony was that of Clayton Northrup, who would testify that, pretending to be Mark Herd, he contacted the victim and they were to get together in Lawrence relative to a marijuana transaction. Although a specific ruling was not made, apparently this testimony was excluded on the ground of relevancy.
There is some question as to whose testimony the Northrup testimony would be impeaching, as it was inconsistent with defendant's own version of the purpose of the Lawrence trip. As *774 far as defendant's proffered testimony as to arranging dates with other men, there is a real question as to whether that came within the purview of K.S.A. 60-447a as to previous sexual conduct. However, in the case before us there was no claim by anyone that the Lawrence trip was not wholly consensual. The alleged crimes occurred after the trip had been concluded and nothing occurred during the trip that was related to the crimes. There are serious questions of relevancy as to what did or did not occur in Lawrence. The trial court granted considerable latitude to defendant in exploring the Lawrence events and the relationship of the parties. Obviously, the purpose of such testimony was to discredit the victim's testimony.
In State v. Hall, 220 Kan. 712, 716, 556 P.2d 413 (1976), this court stated:
"K.S.A. 60-420 provides:
"`Subject to sections 60-421 and 60-422, for the purpose of impairing or supporting the credibility of a witness, any party including the party calling him may examine him and introduce extrinsic evidence concerning any conduct by him and any other matter relevant upon the issues of credibility.'
"Contrary to the contention of the defense made during the trial, K.S.A. 60-422 does not authorize any particular type of evidence bearing on credibility, it imposes limitations on its admissibility. In our present case the credibility of Copeland was the focal point and the limitation on inquiry was as to specific facts of the incident. A trial judge must be given judicial discretion in determining the relevancy and extent of extrinsic evidence which is offered to test the credibility of a witness under K.S.A. 60-420. In the absence of court discretion to control the extent of credibility evidence the true issues in a criminal trial might well be obscured by trial of the witnesses.
"In discussing the limitation imposed by K.S.A. 60-422(d) this court in State v. Humphrey, 217 Kan. 352, 537 P.2d 155, said:
"`It has been stated that the reason for the restriction is that where character is only incidentally involved it would not be expedient to let the trial go off on collateral tangents which would result from trying out the factual issues involved in the proof of specific instances of conduct....' (p. 364.)
"On the issue of credibility of a witness the trial court's determination as to the proper extent and limitation on extrinsic evidence will not be reversed on review except for an abuse of judicial discretion which affirmatively appears to have affected the substantial rights of the party complaining. (K.S.A. 60-2105; State v. Winston, 214 Kan. 525, 520 P.2d 1204.) We find no abuse of discretion."
We do not find the trial court abused its discretion in excluding the proffered testimony herein.
V. SUFFICIENCY OF THE EVIDENCE
The standard for review of sufficiency of the evidence was set forth in State v. Voiles, 226 Kan. 469, Syl. ¶ 6, 601 P.2d 1121 (1979):

*775 "In a criminal action where the defendant contends the evidence at trial was insufficient to sustain a conviction, the standard of review on appeal is: Does the evidence when viewed in the light most favorable to the prosecution convince the appellate court that a rational factfinder could have found the defendant guilty beyond a reasonable doubt?"
Basically, the jury could believe the victim or the defendant. The victim testified that she tried to signal the manager of the motel while defendant was checking in. This was partially corroborated by the motel manager, who saw her signaling from the car but did not understand the message to be a plea for help. The victim testified defendant took her to the motel against her will, under threat of a gun, and raped her. Defendant admits they went to the motel, but alleges it was consensual and denies rape. A rational factfinder could have found defendant guilty beyond a reasonable doubt.
The judgment is affirmed.
FROMME, J., not participating.