NOT DESIGNATED FOR PUBLICATION

No. 125,928

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

THEODORE T. WILSON,
*Appellant*.

MEMORANDUM OPINION

Appeal from Douglas District Court; AMY J. HANLEY, judge. Submitted without oral argument. Opinion filed April 5, 2024. Affirmed.

*Sam Schirer*, of Kansas Appellate Defender Office, for appellant.

*Jon Simpson*, senior assistant district attorney, *Suzanne Valdez*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before GREEN, P.J., HILL and CLINE, JJ.

PER CURIAM: Theodore T. Wilson seeks to set aside his criminal conviction because he alleges that prosecutorial errors during his jury trial prejudiced the jury against him and denied him a fair trial. For the reasons explained below, we find Wilson's arguments unpersuasive and affirm his conviction.

1

FACTS

This case arises out of a fight between two men who were each on-again, off-again romantic partners of Emily Schaal. The victim, Chad Hall, testified he had known Schaal since 2014. He said they were not in a romantic relationship in December 2019, but he did think at that time he was the father of her infant child. He later discovered Wilson was the father. Hall said he and Wilson knew of each other through Schaal. He claimed they had seen each other once or twice from a distance (about 30 or 40 feet apart), but they had not "officially met."

Hall was at Schaal's home on the evening of December 5, 2019, along with another couple. Hall said Wilson came into the room where everyone was hanging out and got on top of Schaal. Wilson then got up, looked at Hall, and pulled out a knife. The two men began fighting, and Hall claimed Wilson stabbed him three times during the fight. Hall was taken by ambulance to the hospital where he was treated for his injuries. At the time of trial, Hall had a scar on his face, which he showed the jury.

Wilson did not present evidence in his defense. During closing, his attorney mainly challenged Hall's identification of Wilson. He pointed out Hall was intoxicated that night and Hall did not know and had little contact with Wilson before the fight. He also questioned whether the knife wounds were knowingly inflicted.

Wilson was charged with one count of aggravated battery (knowingly causing great bodily harm or disfigurement to another person), a severity level 4 person felony under K.S.A. 2019 Supp. 21-5413(b)(1)(A). At trial, the jury was instructed on both the charged crime and several lesser included crimes. The jurors deliberated for two days, during which time they asked for testimony from Hall and a responding police officer to be read back. They also asked whether a unanimous verdict of not guilty was required. They eventually returned a verdict finding Wilson guilty of the lesser included charge of

2

knowing aggravated battery, bodily harm with a deadly weapon. The district court sentenced Wilson to 22 months in prison.

ANALYSIS

Wilson appeals his conviction on the grounds that the prosecutor erred by inflaming the passions of the jury "throughout" his trial. He claims she made comments which were unsupported by the evidence and designed to play on the jury's sympathy in her opening statement and closing argument. He also alleges that she elicited (or attempted to elicit) provocative and irrelevant evidence during her examination of Hall. While we find the prosecutor erred in her examination of Hall, we do not find those errors prejudiced his trial.

*Standard of review*

We use a two-step process to evaluate claims of prosecutorial error which involves determining first whether the prosecutor erred and next whether that error prejudiced the defendant:

> "To determine whether prosecutorial error has occurred, the appellate court must decide whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial. If error is found, the appellate court must next determine whether the error prejudiced the defendant's due process rights to a fair trial. In evaluating prejudice, we simply adopt the traditional constitutional harmlessness inquiry demanded by *Chapman* [*v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)]. In other words, prosecutorial error is harmless if the State can demonstrate 'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict.' We continue to acknowledge that the statutory harmlessness test also applies to prosecutorial error, but

3

when 'analyzing both constitutional and nonconstitutional error, an appellate court need only address the higher standard of constitutional error.' [Citations omitted.]" *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016).

Applying these principles, we address first whether the prosecutor erred and then whether Wilson was prejudiced by any errors.

*The prosecutor did not err by her comments in her opening statement and closing argument.*

Wilson first argues the prosecutor embellished Hall's testimony and improperly played to the jury's sympathy during her opening statement and closing argument. Both comments on which he relies to support this argument address Hall's disfiguring scar.

In her opening statement, the prosecutor said:

"On that night, Chad's face was permanently altered all because of the defendant's actions. *Each day as Chad looks in the mirror, he's reminded of the attack that the defendant launched on him*." (Emphasis added.)

And in her closing argument, she told the jury:

"Chad showed you the long pink scar 29 months after that attack. That's where we are today, 29 months later, and to this day, *he has to look in a mirror and see that physical disfigurement*." (Emphasis added.)

Wilson concedes the disfigurement was part of the elements of his charge and that it was proper for the State to mention Hall's injuries resulted in a scar that was visible during trial. But he says it was unfair to insinuate that Hall must suffer the attack every time he looks in the mirror and sees the scar. Wilson claims Hall testified at trial that he was unbothered by the scar.

4

Prosecutors may craft arguments that draw reasonable inferences from the evidence, but their comments must not be intended to inflame the jury's passions or prejudices or divert the jury from its duty to decide the case based on the evidence and controlling law. *State v. Lowery*, 308 Kan. 1183, 1207, 427 P.3d 865 (2018); *State v. Anderson*, 294 Kan. 450, 463, 276 P.3d 200 (2012).

Here, the prosecutor's comments were reasonably inferable from the evidence presented during trial. First, Wilson cites Hall's testimony out of context. Hall told the jury that although he is not bothered by the scar in his everyday life, it is sometimes difficult having to explain what had happened. And he testified that he is still living with anxiety after being attacked, and he is scared to be in public. Next, referencing that Hall "has to look in the mirror" and see his scar merely alludes to the fact that the scar on Hall's face was visible to him every time he looks in the mirror. The jury was able to view Hall's visible scar at the time of trial, and he admitted it bothers him to relive the altercation when people ask him about it. Based on this evidence, it was not unreasonable for the prosecutor to infer that the scar reminded Hall of the attack.

A prosecutor "may indulge in impassioned bursts of oratory and may use picturesque speech as long as he or she does not refer to facts not disclosed by the evidence." *State v. Rodriguez*, 269 Kan. 633, 643, 8 P.3d 712 (2000). The prosecutor was simply vividly describing facts which were supported by the evidence and drawing reasonable inferences from that evidence. That this evidence is naturally inflammatory given the visibility of the scar and its location does not mean the prosecutor cannot mention it. We find the comments at issue fall within the wide latitude given prosecutors to highlight evidence and discuss inferences reasonably drawn from that evidence during opening statement and closing arguments. *State v. Timley*, 311 Kan. 944, 949, 469 P.3d 54 (2020). We do not find them unnecessarily inflammatory or improper and therefore we see no error.

5

*The State concedes the prosecutor erred by asking irrelevant questions.*

Wilson next challenges the prosecutor's questioning during Hall's testimony that inquired into Schaal's post-incident extramarital relationship with Wilson. Wilson argues that the line of questioning was irrelevant and intended to paint Wilson in a bad light.

During the trial, the prosecutor asked Hall the following:

"Q.  Don't mind me asking, why are you getting a divorce from Ms. Schaal?
"A.  The relationship was unfit. It wasn't very healthy for either one of us, and there was a lot of . . . a lot of complications with it as well.
"Q.  To your knowledge, was Ms. Schaal unfaithful to you?
"A.  Yes.
"Q.  Do you know who she was unfaithful to you with?
"A.  Multiple people. I know one of them being Mr. Wilson.
"Q.  Do you know how long Ms. Schaal saw Mr. Wilson during your marriage?
"A.  No, ma'am.
     "MR. FALLS:  Objection, Judge, relevance.
     "[Prosecutor]:  Your Honor, this goes to the motive of the defendant.
     "THE COURT:  Right now I don't have a basis to find it relevant. I don't know when they were married.
. . . .
"Q.  Mr. Hall, when did you and Ms. Schaal get married?
"A.  In May of 2020.
     "THE COURT:  Objection sustained."

The State concedes this line of questioning was in error but questions the scope of the matter preserved for our review. The State argues that since Wilson only objected to the prosecutor's question asking how long Schaal and Wilson saw each other, the prior question about whether Schaal was unfaithful to Hall is not preserved for review by this court.

A "timely" objection must be made to the admission of evidence—including questions posed by a prosecutor and responses to those questions—to preserve the issue of prosecutorial error for appellate review. K.S.A. 60-404; *Lowery*, 308 Kan. at 1195-96; see also *State v. George*, 311 Kan. 693, Syl. ¶ 2, 466 P.3d 469 (2020) ("A defendant may not evade the contemporaneous objection requirement demanded by K.S.A. 60-404 by asserting an evidentiary claim on appeal under the guise of prosecutorial error."). But as we noted in *State v. Fisher*, No. 109,706, 2014 WL 3731928, at *6 (Kan. App. 2014) (unpublished opinion), *aff'd* 304 Kan. 242, 373 P.3d 781 (2016), timely does not mean instantaneous. The purpose of K.S.A. 60-404's rule is to allow the district court the opportunity to consider whether the evidence should be admitted and to prevent the jury from hearing tainted or inadmissible evidence, reducing the chances of reversible error and a new trial. 2014 WL 3731928, at *6 (citing *State v. McCaslin*, 291 Kan. 697, 707, 245 P.3d 1030 [2011]).

Here, the timing of the objection allowed the district court to rule on whether evidence of Schaal and Wilson's relationship after the altercation should be admitted. We therefore find Wilson's complaint about the prosecutor's attempt to elicit testimony on this issue preserved for appeal. And since the State concedes the prosecutor erred in this line of questioning by failing to establish its relevancy, we need not address that issue. We thus move on to address the last claim of error.

*The prosecutor erred by asking questions about evidence that was previously barred.*

Lastly, Wilson argues that the prosecutor's questions inquiring into Wilson's prior acts of domestic violence against Schaal were improper and violated the district court judge's pretrial limine order. Wilson claims the prosecutor's attempt to introduce Wilson's uncharged instances of prior domestic battery was also improper as the prosecution failed to provide advanced notice under K.S.A. 2019 Supp. 60-455(e).

7

Before the hearing, Wilson moved to exclude from trial any testimony from witnesses about pending cases or other matters involving Wilson and Schaal. These matters included pending charges against Wilson for domestic battery and violation of a protection from abuse order, both of which involved Schaal as the victim. The State did not object, and the court granted the motion.

During her direct examination of Hall, the prosecutor asked:

"Q. And why were you over at Ms. Schaal's residence that night?
"A. Earlier that day she had asked me to come over because she had felt unsafe.
"Q. Do you know why she felt unsafe?"

Defense counsel immediately raised a relevancy objection, arguing in a bench conference outside the jury's hearing that the prosecutor's questions were close to the matters addressed in the motion in limine order. The district court then sustained the objection because the prosecutor had not moved to admit such evidence under K.S.A. 60-455.

On cross-examination, defense counsel asked Hall:

"Q: You knew that Ms. Schaal had had some issues with Mr. Theodore Wilson?
"A: Yes.
"Q: And that he may have actually been the father of [Schaal's] child?
"A: Yes."

Later, the prosecutor asked Hall during redirect:

"Q. Now, on cross [defense counsel] asked you about Ms. Schaal's prior issues with Mr. Wilson.
    "What did you know about Ms. Schaal's prior issues with Mr. Wilson?
"A. Honestly, it wasn't my business to know so I . . . I apologize, what I knew was what she had said, and that wasn't much at all.

> "I know that they had relationship issues but besides that, I didn't ask. I didn't care to ask so to say.
>
> "Q.  Did you know her to be in fear of Mr. Wilson?"

Again, defense counsel objected on the grounds of relevance. The State countered that the question related to the altercation at issue and that the defense opened the door during cross-examination. The court sustained the objection.

The State contends Wilson has not established the prosecutor was ill-intentioned and that she likely intended to ask general questions about Schaal's feelings of unease without getting into evidence of Wilson's separate criminal charges. But the State admits Schaal did indeed tell law enforcement that she had invited Hall over because she was scared due to a previous domestic violence issue with Wilson that occurred two days before. So even if the prosecutor did not intend to elicit the prohibited testimony, it is not unreasonable to expect that this line of questioning would do just that. We find it was error for the prosecutor to ask about the basis of Schaal's feelings when the prosecutor knew or should have known the evidence which prompted those feelings had been excluded from trial.

As for the prosecutor's similar question during redirect examination, the State argues that defense counsel opened the door for clarification on the relationship issues between Schaal and Wilson, and thus the prosecutor's question was not barred. The State further claims that establishing whether Schaal was in fear of Wilson, as the prosecutor asked, would be too unspecific to implicate K.S.A. 60-455.

As for the State's argument that K.S.A. 60-455 was an improper basis to sustain Wilson's objection, we find that issue unpreserved since the State did not appeal that ruling. And while whether the defense "opened the door" to evidence previously excluded by the district court is a close call, we find under the circumstances that it did not.

9

The cross-examination question about Schaal's prior "issues" with Wilson tread into dangerous territory, but no testimony was elicited about Schaal feeling unsafe or Wilson's pending cases. And unlike the three cases that the State relies on to support its point, the defense attorney did not mention prior domestic battery issues between Schaal and Wilson in his question, nor did his question cast an unfair light on Wilson or Schaal by only telling part of the story.

In the State's first case, *State v. Albright*, 273 Kan. 811, 820-21, 46 P.3d 1167 (2002), our Supreme Court found the district court did not err in allowing a prosecutor to cross-examine an expert witness about a defendant's prior bad acts since such evidence was admissible under K.S.A. 60-458 as data on which the expert's opinion was based. There is no expert testimony involved here. In the State's second case, *State v. Washington*, 226 Kan. 768, 602 P.2d 1377 (1979), the Supreme Court found defense counsel had opened the door to the line of testimony on cross-examination that the witness was afraid of the defendant since he tried to impeach that witness by showing a prior alleged inconsistent statement. The court found the alleged offending question was designed to rehabilitate the witness and explain why the witness made the statement at issue. 226 Kan. at 771. Here, no one was trying to impeach Hall (or any other witness) with questions involving Wilson's pending cases or Schaal's feelings of insecurity. And last, in *State v. Crutchfield*, No. 89,278, 2004 WL 235428, at *4 (Kan. App. 2004) (unpublished opinion), we found the State was allowed to introduce on redirect previously excluded domestic battery evidence because defense counsel had opened the door by cross-examining the witness about past physical fights with others in a way that would have unfairly cast the victim in a negative light and the defendant in a positive light by picking and choosing past altercations to discuss. Again, the prosecutor's questions were not designed to correct a mischaracterization of the relationship between Wilson, Hall, or Schaal or Wilson's history with domestic violence. So we find our holding in *Crutchfield* fails to support the State's position as well.

10

In Hall's cross-examination, the jury was not told that Schaal's "issues" with Wilson related to Schaal feeling unsafe or Wilson's pending cases. And indeed, when the State asked Hall about these "issues" on redirect, he generically described them as "relationship issues." But the prosecutor then went one step further by asking Hall whether Schaal feared Wilson, even though Hall did not discuss this topic on cross-examination. The prosecutor had already been barred from asking Hall about why Schaal felt unsafe because such a question involved information the court had precluded from trial. Contrary to the State's contention, the redirect question by the prosecutor would still fall under the limine order barring questions related to Wilson's prior acts of violence or threats made to Schaal and was thus in error.

For these reasons, we find the questions asked by the prosecutor during direct and redirect were improper and in error. Next, we must examine whether these errors prejudiced the fairness of Wilson's jury trial.

*Wilson was not prejudiced by the prosecutor's errors.*

Wilson claims that because Hall's identification of Wilson was weak and the State had trouble establishing the attacker knowingly inflicted the knife wounds, the three errors combined undermined the fairness of Wilson's trial. He claims the inflammatory remarks about Wilson and Schaal's extramarital relationship primed the jury to find someone accountable and the prior acts of domestic violence gave the jury a reason to punish him.

Prosecutorial error is harmless if the State can demonstrate beyond a reasonable doubt that the error did not affect the outcome of the trial in light of the entire record, which is to say, there is no reasonable possibility that the error contributed to the verdict. *State v. Fraire*, 312 Kan. 786, 791-92, 481 P.3d 129 (2021). As discussed above, the

11

prosecutor's opening and closing statements did not amount to error. Therefore we only examine prosecutor's questions during her direct and redirect examination of Hall.

As the State correctly notes, all three questions were objected to and those objections were sustained by the district court. Other than the first question (about Schaal's unfaithfulness in her marriage to Hall with Wilson), defense counsel raised the objection immediately after the questions and the jury did not hear an answer. And even though the first question was answered by Hall, the jury heard the district court sustain the objection a few moments later since Schaal and Hall were not married at the time Schaal had an affair with Wilson.

This court has held that prejudice could be cured if the district court sustains an objection against a prosecutor's question. See *State v. Barber*, No. 106,911, 2013 WL 1339884, at *7 (Kan. App. 2013) (unpublished opinion), *aff'd* 302 Kan. 367, 353 P.3d 1108 (2015); see also *State v. Robinson*, 303 Kan. 11, 317, 363 P.3d 875 (2015) (finding no prejudice in a prosecutor's remark that was interrupted by the defense's objection), *disapproved on other grounds by State v. Cheever*, 306 Kan. 760, 402 P.3d 1126 (2017); *State v. Summers*, 293 Kan. 819, 831, 272 P.3d 1 (2012) (finding a question, while inappropriate, that was objected to and sustained cured any possible prejudice in a strongly circumstantial case); *State v. Gleason*, 277 Kan. 624, 642, 88 P.3d 218 (2004) (holding that the court found no reversible error when an objection to a prosecutor's question or statement has been sustained); *State v. Douglas*, 274 Kan. 96, 108, 49 P.3d 446 (2002) (finding comment by prosecutor did not prejudice defendant where objection sustained and jury instructed to disregard). Thus, we similarly find that no prejudice resulted from the questions asked by the prosecutor here.

Another factor we consider in finding that the prosecutor's error did not affect the jury's verdict is the district court's jury instruction. In determining whether a prosecutorial error prejudiced the jury, appellate courts must consider the extent of any ameliorating

12

effect of a jury admonition attempting to remedy any such error. *State v. Barber*, 302 Kan. 367, 383, 353 P.3d 1108 (2015). The district court judge provided the jury with the following instruction:

> "In your fact finding you should consider and weigh everything admitted into evidence. This includes testimony of witnesses, admissions or stipulations of the parties, and any admitted exhibits. You must disregard any testimony or exhibit which I did not admit into evidence.
>
> "At times during the trial, I have ruled upon the admissibility of evidence. You must not concern yourself with the reasons for these rulings. I have not meant to indicate any opinion as to what your verdict should be by any ruling that I have made or anything that I have said or done.
>
> "Statements, arguments and remarks of counsel are intended to help you in understanding the evidence and in applying the law, but they are not evidence. If any statements are made that are not supplied by evidence, they should be disregarded."

Appellate courts presume juries follow the instructions provided by the district courts. *State v. Hillard*, 313 Kan. 830, 845, 491 P.3d 1223 (2021). Moreover, the Kansas Supreme Court has held that although proper jury instructions do not grant prosecutors an excuse for any errors, they are appropriate consideration in determining whether the prosecutor's error affected the verdict. *State v. Huddleston*, 298 Kan. 941, 956, 318 P.3d 140 (2014). The jury was properly advised under the district court's instruction, and there is no reason to believe that the questions at issue would have affected the jury's verdict. Nor did Wilson claim that the jury failed to follow instructions or that the jury instructions were improper.

We also note the jury had a difficult time coming to a unanimous decision. The jury asked three questions over the two-day deliberation period, but none of the questions pertained to alleged prejudicial effects from the questions asked. None of the questions asked about Wilson's prior acts of violence or the relationship between Schaal and

Wilson. And the jury eventually returned a verdict finding Wilson guilty of the lesser included charge of knowing aggravated battery, bodily harm with a deadly weapon. The jury's questions and verdict show it seriously deliberated over the evidence and charges, which reinforces our determination that the jury was not prejudiced by the prosecutor's improper questions.

While we find the prosecutor erred, we also find the State has met its burden to show beyond a reasonable doubt that the errors did not affect the jury's verdict. We therefore affirm Wilson's conviction.

Affirmed.